State vs. West.

## No. 11,105.

### THE STATE OF LOUISIANA VS. ARTHUR WEST.

1. An order fixing terms of court, if spread the same day it is rendered upon the minutes and read, is substantially " an order rendered in open court," although written and signed at chambers.

2. The mere fact that a judge in sustaining objections to the introduction of testimony does so on grounds different from those urged is not assignable error, particularly where neither the judge's reasons nor those of the district attorney are questioned as to their correctness, nor given in the bill of exceptions.

3. It is the duty of an accused in offering testimony not apparently relevant to disclose to the court the particular facts he expects to elicit, with explanations sufficient to show the admissibility of the testimony; it does not suffice to say in general terms that he proposes through it to establish his innocence, and that some one other than himself had killed the deceased.

4. Where a third person some time after the commission of a homicide declares that he killed the deceased, such declaration would be rejected as hearsay if the party after making it had escaped. The character of the testimony is not changed by the accidental fact that he had died instead of escaping.

5. Where the Supreme Court is called upon to review the refusal of a trial judge to submit special charges the bill of exceptions must either recite the particular state of facts upon which they are made to rest, or the charges must contain correct statements of general law. If they can not stand that test the

judge's ruling will be sustained, it being his right, but not his duty, to qualify, limit or explaim special charges.

6.  It is not true as [a general proposition that "one who is assaulted by another with a dangerous weapon is justified in taking the life of the person so assaulting him," nor that "if ' A' assaults ' B' with a dangerous weapon, and ' B' believes his life in danger, and that he is in danger of great bodily harm, he is justified in shooting at ' A,' and that if in so doing he kills ' C' the killing is justifiable or excusable," nor that " when a person is assaulted by another with a dangerous weapon, and the person assaulted is in danger, or if he believes his life is in danger, and has reason to so believe, or that he will suffer great bodily harm, he is not bound to retreat, but may kill his assailant."

7.  A charge to the effect that " it may be safely said that the bare fact that a man intends to commit murder or other atrocious felony without any overt act indicative of any such intention, will not excuse the killing of any such person by way of prevention" furnishes no ground of complaint to the accused.

8.  An instruction that "in order to justify a homicide on the ground of self-defence a person must employ all the means within his power consistent with his safety to avoid the danger and avert the necessity, and he must retreat if retreat be practicable," is too broad. There are many cases where a person is not called on as stated to do either the one or the other.

9.  A charge that " the fact that a person has deadly weapons, or even that he *presents them,* is not an excuse for killing him unless he *manifestly intends* to use them against the slayer, but where such intention *plainly* appears it affords grounds for the reasonable belief of imminent danger which will justify the killing," when taken in connection withot her portions of the general charge to the effect that the homicide is excusable when committed in the *actual and necessary* defence of the life or person of the slayer, and " that menaces or gestures which do not constitute an assault, however irritating or provoking they may be, will not excuse a homicide unless they show *unequivocally* an intent of the party making them to use a deadly weapon against the slayer," and that " an actual assault under circumstances which create a JUST apprehension of death or great bodily harm to another is adequate ground for that reasonable belief or fear of imminent danger or great bodily harm which will justify the killing of the assailant," placed higher than the law required of the accused the standard of the degree of certainty in the evidence upon which he was called to act at the time of the killing, and too high the standard of the correctness of the conclusions which he had to reach on that evidence. Such an instruction was calculated to injure the accused, although it was stated in the charge that in order to justify a homicide it must appear that the defendant at the time he caused the death of the deceased was acting under a *reasonable belief* that he was in imminent danger, and that it was necessary to act to save his life from a danger which was APPARENTLY imminent.

APPEAL from the Eighteenth District Court, Parish of Lafourche. Caillouet, J.

*M. J. Cunningham,* Attorney General, and *M. J. Cunningham, Jr.,* for the State, Appellee:

1.  This court will not interfere when there is nothing in the record showing that the judge of the District Court acted contrary to the law in fixing terms of court.

2. Evidence of what happened at the arrest and killing of A is not admissible on the trial of B when no connection is shown by defence between these two events.

3. The refusal by the court to give special charges to the jury is not ground for the reversal when the charge requested is substantially the same as the instructions already given, although clothed in different language. State vs. Garic, 35 An. 970.

4. Gambling in the jury room will not vitiate the verdict unless it be shown affirmatively that the rights of the accused have been prejudiced.

*Beattie & Beattie* for Defendant and Appellant:

The Districts Courts can not fix their terms without authority from the Legislature.

The District Courts organized under Acts of 1890, p. 56, could not fix their terms by an order in chambers prior to the Act of June 28, 1892.

The Act of June 28, 1892, only went into effect in Lafourche on July 18, 1892, and an order in chambers issued June 30, 1892, was illegally issued.

When a person is assaulted by another with a dangerous weapon, this is proof sufficient of intent to kill or do great bodily harm to warrant the person assaulted in taking the life of his assailant, and he need not retreat. Bish. Cr. L., Vol. I, Secs. 217, 314, 346, 305, 850, 844 and 849; Bish. Cr. L., Vol. II, 664 and 669—Selfridge case—Wharton 1005, 1013, 1026, Coffman vs. Commonwealth; 10 Bush (Ky.) 495, 31 An. 303, 32 An. 1099, 35 An. 972; Runyan vs. State, 57 Ind. 80; Irwin vs. State, 29 Ohio St. 186.

Intent to murder B by A once established, B need not await any overt act.

If A assaults B with a dangerous weapon and B believes his life in danger he is justified in shooting at A, and if he kills C he is excusable. It is an act of necessity and he is only responsible for the grossest negligence. Bish. Cr. L., Vol. I, Secs. 217, 314, 346; Vol. II, Secs. 664, 669; Wharton Cr. L. 1005, 1013.

Evidence to prove that another was arrested for the same homicide, that he resisted arrest and was killed in so resisting, and what he said at the time he was arrested and killed, is competent testimony to establish the innocence of accused, and should be admitted subject to its effect.

Gambling in jury room, while deliberating on capital cases, is gross misconduct and vitiates the verdict.

The opinion of the court was delivered by

NICHOLLS, C. J.   The defendant was indicted for murder at the September term of 1892 of the Eighteenth Judicial District Court for the parish of Lafourche, and having been convicted of manslaughter he has appealed.

His first contention is, that the whole trial was illegal for the reason that the term of court at which he was tried and convicted was held at the wrong time if there was any law authorizing it to hold a term.

On this point he says that court was convened on the 5th of September, 1892; that by Art. 108 of the Constitution the District

Court for Lafourche parish was the Twentieth District Court, and the jury terms of that district, as fixed under the law, were the first Mondays of April and October. That under Act No. 7 of 1880 the courts were only authorized to fix and change the terms in open court. That this was not done, but the order fixing the terms of court for the parish of Lafourche was issued in chambers. That although the Act of 1892 authorizes this to be done in chambers, that act was only passed June 28, 1892, and the order referred to was issued June 30, 1892, the new law having not yet been promulgated.

We are of the opinion that the term at which the accused was tried was a legal one. Assuming that the order fixing the terms was *written* at chambers it was at once on the same day spread on the minutes of the court, which minutes were read daily. The terms of court were in this way substantially fixed in open court.

It is objected that on the trial of the cause the district judge interposed an objection to the introduction of testimony which the parties themselves had not raised. This complaint loses all force as the matter is presented to us. It appears that the State did urge objections to the testimony, but that the court in excluding it did so for a different reason than that presented. In consequence of this action of the court the particular grounds set up by the State have not been made known to us. If the reason assigned by the district attorney was a valid reason for exclusion, and we have no right to assume it was not, the mere fact of itself that the judge placed the exclusion on a differnt one is not reversible error.

The exclusion of the testimony to which we have just referred for the reason given therefor by the judge is the subject of the next bill of exceptions.

The bill states that a witness for the defence being upon the stand was interrogated by counsel for the defendant as to whether or not he was not present when one Jimmy Baptiste was arrested and when he was killed, which testimony was objected to by the district attorney; that subsequently the said witness was asked what the said Baptiste said at the time of his arrest, which was also objected to by the district attorney; that thereupon counsel for the defence stated to the court that the object of the defence was to show that said Jimmy Baptiste was the real party who had killed Thomas Lyall, of which killing the accused is charged, and that by said testimony the

2

accused expected to prove that he was innocent and had not killed Thomas Lyall, but that in reality Lyall had been killed by Baptiste, but that notwithstanding said statement the court sustained the objections and ruled out the evidence because it could not see what tendency or relevancy proof of what took place at the arrest and killing of Baptiste had to the establishment of the fact that Baptiste had killed the deceased, instead of the deceased being killed by the accused.

We are not informed by the bill what the character of the testimony was which accused was seeking to elicit, and therefore do not know whether it should have been excluded or not. It is not sufficient to say in general terms that he proposed through certain testimony to prove that he was innocent of the crime charged and tha some one other than himself had killed the deceased.

The accused should have informed us of the particular facts he proposed to elicit, with explanations sufficient to show that the testimony was relevant and was admissible under the rules of law. We gather from defendant's brief that Baptiste (who was the party with whom accused was fighting at the time Lyall was killed by a shot from the pistol of one or the other) was himself suspected of having killed the deceased, and that in an attempt to arrest him on that charge he had resisted, been wounded and soon after died, but that before dying he made some admission or declaration, which it is claimed would lead to the belief that it was he who had killed Lyall, and that it was this admission which defendant was trying to avail himself of. We think the ruling of the trial judge on this point correct. Had Baptiste made a direct admission that he had killed the deceased and then escaped and this declaration had been sought to be introduced in evidence through one who heard him make it, it would have been excluded as hearsay. The accidental fact of his death will not alter the character of the declaration and the testimony in support of it—it is still hearsay. Woolfolk vs. State (Ga.), 8 S. E. Rep. 730; XI S. E. Rep., 814.

Complaint is made of the refusal of the district judge to give two special charges submitted to him. When an accused asks this court to review such a refusal without a recital of the facts upon which the charges as presented are made to rest, he must be certain that they contain correct statements of general principles of law. The special charges asked in this case can not stand that test. It is not

State vs. West.

true as a general proposition that "one who is assaulted by another with a dangerous weapon is justified in taking the life of the person so assaulting him;" nor that "if 'A' assaults 'B' with a dangerous weapon and 'B' believes his life in danger, and that he is in danger of great bodily harm, he is justified in shooting at 'A,' and that if in so doing he kills 'C,' the killing is justifiable or excusable;" nor that "when a person is assaulted by another with a dangerous weapon and the person assaulted is in danger, or if he. believes his life is in danger and has reason so to believe, or that he will suffer great bodily harm, he is not bound to retreat, but may kill his assailant."

Although a trial judge may, he is not forced to give a special charge which requires qualification, limitation or explanation. State vs. Jackson, 35 An. 769; 35 An. 770, State vs Riculfi.

Having disposed of the special charges which were refused, we are next called upon to consider that actually made by the court, which was in writing, and brought up in the transcript, and to certain portions of which exceptions were taken. Before doing so it may be well to remark that in overruling the application for the special charges the district judge refers the court to his general charge.

The portion of the charge excepted to is that having reference to self-defence. On this subject the court said: "Homicide is excusable when committed *in the actual and necessary* defence of the life or person of the slayer, but in order to justify a homicide on the ground that it was committed in self-defence it must appear that the defendant at the time he caused the death of the deceased was acting under a *reasonable belief* that he was in imminent danger of death or great bodily harm from the deceased, and that it was necessary for him to strike the fatal blow, or to perform such other act causing the death of deceased, in order to avoid the death or great bodily harm which was *apparently* imminent. By imminent danger is meant danger such as must be instantly met, and can not be guarded against by calling upon others for assistance or upon the law for protection. By "great bodily harm" is meant great bodily injury."

"No general rule is applicable to all cases as to what is, as a matter of law, sufficient ground to cause a reasonable belief of imminent

danger, but the question must depend, to a great degree, upon the facts of each particular case."

" It may be safely said, however, that the bare fact that a man intends to commit murder or other atrocious felony without any overt act indicative of any such intention will not excuse the killing of such person by way of prevention. There must be some overt act indicative of imminent danger at the time. Mere words or threats uttered by the deceased, however abusive or violent, without any overt act or other indication to follow up the words with an assault to carry out the threats are not sufficient grounds for the reasonable belief of imminent danger which is necessary to support the plea of self-defence. Mere gestures or menaces which do not constitute an assault, however irritating they may be, will not excuse a homicide unless they show *unequivocally* an intent of the party making them to·use a deadly weapon against the slayer."

" The fact that a person has deadly weapons, or even that he *presents them*, is not an excuse for killing him unless he *manifestly* intends to use them against the slayer; but where *such* intention *plainly* appears it affords grounds for the reasonable belief of imminent danger which will justify the killing."

" An actual assault under circumstances which create a *just* apprehension of imminent danger of death or greatly bodily harm to another is adequate ground for that reasonable belief or fear of imminent danger which will justify the killing of the assailant; but an assault without a weapon apparently causing peril of a mere indignity to the person or of a mere battery from which great bodily harm can not reasonably be apprehended will not excuse the killing of the assailant as in case of self-defence. One who kills another under apprehension of death or great bodily harm from an assault must have been free from fault in bringing on the difficulty if he would contend that the homicide is excusable; but if the assailant by his conduct had before the killing was committed given notice of his desire to withdraw from the combat and had really and in good faith endeavored to decline any further struggle and the homicide was necessary to save himself from great bodily harm it might be excusable."

" In order to justify a homicide on the ground of self-defence, a person must employ all means within his power consistent with his

safety to avoid the danger and avert the necessity, and he must retreat if retreat be practicable."

Whilst we have said that the trial judge is not forced to give a special charge which requires qualification, limitation, or explanation, it has been held (Wacara vs. People (Ill.) 25 N. E. 525) that "when he throws aside all the instructions asked by one or both of the parties and proposes written instructions of his own, the latter must fairly instruct the jury on all the legal questions involved, and it must appear that no injury has been done to the defeated party by the refusal of the instructions asked by him." Under this rule, coupled with the fact of the reference already alluded to by the judge himself to his written charge, we shall, without going beyond the special objections raised to the general charge, consider the whole charge in reaching our conclusions as to those objections. .

" The first special objection is to the instruction of the court to the effect that it may be safely said that the bare fact that a man intends to commit murder or other atrocious felony without any overt act indicative of any such intention will not excuse the killing of such person by way of prevention."

We see nothing that the accused has to complain of in this charge, particularly taken in connection with the whole charge.

The next objection is to the instruction that "in order to justify a homicide on the ground of self-defence a person must employ all the means within his power consistent with his safety to avoid the danger and avert the necessity, and he must retreat if retreat be practicable."

This statement is too broad. There are many cases where a person is not called on to employ all the means within his power consistent with his safety to avoid a danger and avert its necessity, and there are many cases where a person must not necessarily retreat where retreat is practicable. 12 S. W. 773.

The next objection is to so much of the general charge as declares that " the fact that a person has deadly weapons, or even that he *presents them*, is not an excuse for killing him unless he *manifestly* intends to use them against the slayer; but where such intention *plainly* appears, it affords grounds for the reasonable belief of imminent danger which will justify the killing."

On this point defendants' counsel contend that " the words *manifestly intends* to use them, etc., misled, and was easily the cause of

misleading the jury; that a person to be justified in killing another who assaults him with a deadly weapon is not bound to be certain that he will be killed; it is not necessary that his danger be manifest. It is only necessary that he fear great bodily harm or danger to his life, and that he have good cause so to fear; that if without fault or carelessness he is misled concerning them and defends himself correctly according to what [he supposes the facts to be he is justifiable, although they are in truth otherwise and he has really no occasion for the extreme measure." Citing Bishop Crim. Law, Vol. 1, Sec. 305, pp. 171, 172; S. 850, p. 474.

We have found several reported cases bearing on this objection. In the case of Barnard vs. The State (Tenn.) 12 S. W. Rep. 442, where the complaint was that the judge had told the jury that defendant's apprehensions must have been based on conduct of the deceased "*clearly*" indicative of a present intention to do him great bodily harm, the Supreme Court held that the charge was not objectionable. In 4 S. E. 894, the words "*evidently intended*" were declared not unwarranted, but this was under the precise wording of the Georgia statute.

In the case of Gonzales vs. The State (Texas), 12 S. W. 773, the words "well founded apprehension" were used and sustained.

On the other hand, in the case of Pinder vs. The State (Florida), 8 South. Rep. 840, the Supreme Court, speaking of the charge in that case, said: "It is erroneous because it misstates the law of excusable homicide as defined by this court in Smith vs. State, 25 Fla. 517 (6 South. Rep. 482)." In it the jury are instructed that in order to sustain the theory of self-defence it is necessary that the defendant should have perpetrated the act under the "well grounded belief," *justified by the surroundings,* that it was necessary to take the life of the person slain in order to save his own life or to prevent great bodily harm to himself at the time he fired the fatal shot. In the case last cited this court has in effect defined the law to be that the belief or fear of imminent danger need not in fact be well grounded. But if the conduct, the actions, coupled with the threatening language of the prisoner's assailant, be such as to induce a reasonable, cautious man to believe from the circumstances by which he was surrounded that his life or person was in imminent danger unless he fired the fatal shot, then the killing would be excusable, and from these circumstances as they appeared to the slayer in the

light of the evidence must be deduced the excusing belief of the existence of imminent danger to life or person. All that could be required of the prisoner in such cases would be to show that he was surrounded by such a condition of affairs as made it from his standpoint reasonable for a cautious and prudent man to believe that it was necessary to fire the fatal shot or to strike the fatal blow in order to save himself from death or great bodily harm, even though it may turn out afterward that the surrounding circumstances were deceptive and that in reality his life or person were in no danger at the time. The reasonableness of the belief or fear of the existence of such peril as will excuse the killing is for the jury to determine from all the facts and circumstances adduced in evidence. Though it may be proven at the trial, in the calm solemnity of the court room, after the heat and excitement of the affray has long subsided, that in point of fact the prisoner was in no danger at the time, yet if the jury, after mentally putting themselves in the prisoner's shoes at the time of the killing, seeing from the evidence only as he then saw, and hearing from the evidence only as he then heard, believe from the whole evidence that a cautious and prudent man would, under like circumstances, have been led reasonably to believe his life or person in imminent danger unless he did the act that caused death, then they should under the law, by their verdict, excuse the killing. Under this view it was error to instruct the jury that the belief of danger must be " well grounded."

In the case at bar the court, as we have seen, instructed the jury that " the fact that a person has deadly weapons, or even *presents* them, is not an excuse for killing, unless he *manifestly* intends to use them against the slayer, but where said intention *plainly* appears it affords grounds for the reasonable belief of imminent danger which will justify the killing." Turning now to the charge generally, we find its opening sentence to be that "homicide is excusable when committed in the *actual and necessary* defence of the life or person of the slayer." This is followed, it is true, by the declaration that in order to justify a homicide it must appear that the defendant at the time he caused the death of the deceased was *acting under a reasonable* belief that he was in imminent danger, and that it was necessary to act to save his life from a danger which was " *apparently* " imminent; but the court immediately thereafter says that the menaces must show " *unequivocally* " an intent on the part of the party

making them to use a deadly weapon against the slayer, and in the only attempted definition given of a reasonable belief it is declared that an actual assault under circumstances which create a "JUST" apprehension of imminent danger is adequate ground for that reasonable belief or fear of imminent danger which will justify, etc.

Taking the paragraph of the charge specially objected to, and reading it in connection with that portion of the general charge bearing upon it, so as to enable us to judge of its probable effect upon the mind of the jury, we can not help reaching the conclusion that the court placed higher than the law required of the accused the standard of the degree of certainty in the evidence upon which he was called to act at the time of the killing, and too high the standard of the corrrectness of the conclusions which he had to reach on that evidence.

For the reasons herein assigned, it is ordered, adjudged and decreed that the verdict of the jury and the judgment of the court therein rendered be and the same are hereby annulled, avoided and reversed, and that this case be remanded to the District Court for further proceedings according to law.