(53 South. 877.)

No. 18,528.

STATE v. FLETCHER.

(Dec. 12, 1910.)

*(Syllabus by the Court.)*

1. HOMICIDE (§ 129*)—MURDER—SUFFICIENCY OF INDICTMENT — "WITH MALICE AFORETHOUGHT."

The words "with malice aforethought" are equivalent to the words of the statute, "of his malice aforethought," and clearly convey the meaning of the statute and fully state the elements of the crime so as to apprise the accused of the crime with which he is charged. The words used are therefore sufficient. State v. Humphries, 35 La. Ann. 966; State v. Mosely, 42 La. Ann. 975, 8 South. 470.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. §§ 197, 198; Dec. Dig. § 129.*

For other definitions, see Words and Phrases, vol. 8, pp. 7490–7492.]

2. CRIMINAL LAW (§ 1099*)—BILLS OF EXCEPTIONS—JUDGE'S ADDENDA.

While a trial judge should make up his own statement of facts as addenda to the bill of exceptions, still his acceptance of the statement of facts made by the district attorney as correct is not sufficient ground for setting aside a verdict.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1099.*]

3. WITNESSES (§ 372*)—CROSS-EXAMINATION—PROOF OF RELATIONSHIP BETWEEN WITNESS AND ACCUSED—APPEAL — REVIEW — DISCRETION OF COURT.

The refusal of the trial judge to sustain an objection to a question on cross-examination as to the relationship between the witness and the accused, when nothing relating to this kinship had been brought out on direct examination, is not reversible error. This is one of the questions whose decision is in the discretion of the trial judge. 3 Jones on Criminal Law, p. 811. The ruling of the trial court was correct, for it

is competent to prove relationship between a witness and the accused on cross-examination, even though the matter has not been touched upon in the direct examination.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1192–1199; Dec. Dig. § 372.*]

4. WITNESSES (§ 388*)—IMPEACHMENT—NECESSITY FOR FOUNDATION.

In order to impeach a witness, a foundation must first be laid by asking the witness if he had not made the contradictory statement attributed to him, and then, if he denies it, witnesses may be introduced to impeach him. The witness is entitled to be heard before any attempt is made to impeach him.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1233–1242; Dec. Dig. § 388.*]

5. WITNESSES (§ 321*) — IMPEACHMENT — IMPEACHMENT OF OWN WITNESSES BY ACCUSED.

An accused who is not taken by surprise cannot impeach his own witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1094, 1099–1100; Dec. Dig. § 321.*]

6. WITNESSES (§ 372*)—CROSS-EXAMINATION—SHOWING RELATIONSHIP TO OTHER WITNESSES.

The state may on cross-examination of a witness for the defense ask as to the relationship of this witness to another witness, who is related to the accused and who has testified in his behalf, so that the jury may decide the credibility of the witness under cross-examination.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1192–1199; Dec. Dig. § 372.*]

7. WITNESSES (§ 319*) — IMPEACHMENT — ACCUSED.

An accused who has testified may be impeached like any other witness, and the state may introduce witnesses to show a state of facts different from that shown by the testimony of the accused. However, the witnesses introduced to impeach the accused can be questioned only as to facts pertinent to the issue.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1087–1093; Dec. Dig. § 319.*]

8. CRIMINAL LAW (§§ 419, 420*)—HOMICIDE (§ 203*)—EVIDENCE—DECLARATIONS—HEARSAY.

The account of the shooting given by the deceased at a time when he did not believe he was going to die from his wounds cannot be introduced in evidence as it would be mere hearsay, and, as the deceased did not believe that he was dying, it does not come within the rule of dying declarations.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. §§ 419, 420;* Homicide, Cent. Dig. §§ 430–437; Dec. Dig. § 203.*]

9. CRIMINAL LAW (§ 1128*) — APPEAL — EX PARTE AFFIDAVITS.

Ex parte affidavits to show prejudice against an accused such as to have denied him a fair trial will not be considered on appeal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2952; Dec. Dig. § 1128.*]

*(Additional Syllabus by Editorial Staff.)*

10. CRIMINAL LAW (§ 1170½*) — APPEAL — HARMLESS ERROR—EXCLUSION OF QUESTIONS ASKED WITNESS.

In a murder case, the exclusion of a question asked a physician as an expert, whether from the nature and character of the wounds he did not consider that, if decedent had remained at the sanitarium during the entire time of his illness, he would not have stood a better chance for his recovery, was not prejudicial where the bill of exceptions showed that the objection was that the question was hypothetical in form, and not predicated on anything which had been proved, and that the question first propounded was changed by counsel for the defense, and in its changed form was answered by the witness, since no other inference can be drawn from the ruling and statement in support thereof than that the information sought was given by the expert.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3129–3135; Dec. Dig. § 1170½.*]

11. CRIMINAL LAW (§ 1170½*) — APPEAL — HARMLESS ERROR—RULINGS ON EVIDENCE.

A ruling of court permitting the district attorney to ask a witness a certain question over accused's objection was not prejudicial, where the district attorney, after the ruling, withdrew the question.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1170½.*]

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Willie Fletcher was convicted of murder, and he appeals. Affirmed.

Justin C. Daspit, for appellant. Walter Guion, Atty. Gen., Charles A. Holcombe, Dist. Atty. (R. G. Pleasant, of counsel), for the State.

BREAUX, C. J. The defendant appealed from a verdict and sentence condemning him to suffer the death penalty.

The grand jury of the parish of East Baton Rouge on the 3d day of October, 1910, found a true bill against the defendant,

charging him with having taken the life of Thomas Millican in that parish on the 1st day of June in the year 1910.

He was arraigned on the 4th day of October, 1910, and pleaded not guilty.

He was tried, but the jury failed to reach a verdict, and a mistrial was ordered by the court.

The case was then reassigned for trial, and on the day fixed it was called and tried.

1. The defendant, through counsel, before going to trial, filed a motion to quash the indictment on the ground that it was not drawn in the language of the statute.

The motion was overruled.

The grounds of the motion were, that in the indictment the word "with" was substituted for the words "of his"; that is, the indictment charges that defendant "feloniously, willfully, and *with* malice aforethought killed and murdered one Thomas Millican." (Italics ours.)

The argument on the part of the defense is that in an indictment the words of the statute should be used, and that there should not be the least change.

The word used, as before mentioned, expresses personal malice as much as the word omitted.

The charge is that he committed the act with "his" malice aforethought. It would not have been more forcibly expressed had the words "his malice" aforethought been used. The only malice charged, and the only malice which is expressed, is that by which it is stated the accused was influenced.

There is a definition in Wharton in his work on Criminal Law (2d Ed.) p. 356, which sustains the position here.

In a recent edition (the 7th Russell) Law on Crimes, in describing the offense of murder, on page 820, vol. 2, it is said that it is always necessary to state the act by which the death was occasioned, and that it was done feloniously and of his malice afore-thought, but in his marginal note reference is made back to page 656 of the same volume, where the crime is defined as the unlawful killing, "with malice aforethought."

The word "with" is used as an equivalent of "his."

If the words clearly convey the meaning of the statute, and the constituent elements of the offense are sufficiently definite to apprise the accused of the charge he has to answer, it has been held repeatedly that it is sufficient. State v. Humphries, 35 La. Ann. 966; State v. Mosely & Anthony, 42 La. Ann. 975, 8 South. 470.

See, also, State v. Scott, 38 La. Ann. 387.

Under our view of the law we cannot say the judge of the district court erred in overruling the motion to quash.

2. During the trial the defendant, through counsel, reserved nine bills of exceptions.

In the first bill it is stated counsel for accused propounded a question to the physician as an expert as follows, to wit:

"From the nature and character of that wound, don't you consider that, if the patient had remained at the sanitarium during the entire time of his illness, that he would have stood a better chance for his recovery."

The objection of the district attorney was that the question was hypothetical in form, and not predicated on anything which had been proven, as no evidence had been offered upon the subject.

The district attorney further stated that no objection to the question was raised when propounded in hypothetical form, that the question first propounded was changed by the counsel for the defense, and that in its changed form it was answered by the witness.

The court in its addenda said that the facts were correctly stated by the district attorney.

From the foregoing it cannot be inferred that the defendant was prejudiced in any way.

The information sought must have been given by the expert. No other inference can be drawn from the ruling and the statement in support of the ruling.

But defendant, through counsel, complains of the district attorney's statement incorporated in the bill, which the trial judge chose to accept as correct.

The better practice is for the officer representing the state to have his own statement incorporated in the bill and then the addenda of the judge follow, giving his account of the point taken, or of objection urged.

Ordinarily, when the question is not complicated, the trial judge may accept the statement of the district attorney.

It is always advisable for him to write his own addenda, but, if he does not, it affords no good ground to set aside the verdict.

In this instance, except for the importance and gravity of the cause, which justifies the raising of nice technical points, it does not occur to us that the point has any merit at all.

3. The next point raised by the defendant through counsel is that Cy Jett, a witness for the defendant, testified on his direct examination to having had two conversations with Howard Jettson in the presence of counsel for the accused. The district attorney on cross-examination asked the witness what was the relationship between him and the accused.

Defendant's counsel objected on the ground that the cross-examination must be restricted to the facts and circumstances stated in his direct examination; that the question was not connected with the direct examination.

The objection does not fall within the class of questions subject to review on appeal. It comes within the discretion vested in the trial judge to decide. The rulings of the trial judge upon that subject are not re-versible for error. 3 Jones on Criminal Law, p. 811.

We have none the less given it some consideration, and have arrived at the conclusion that it was properly overruled by the trial judge. The relation of parties may be proven originally on cross-examination without regard to whether the subject was brought up on the examination in chief or not.

The only purpose of the question propounded by the district attorney was to prove relationship of the parties.

But upon further examination of this point we find that there is actually nothing in it by reason of the fact that the same Howard Jettson, as witness for the defendant, admitted his relationship while testifying on his examination in chief.

4. This brings us to a consideration of bill of exceptions No. 3, in which defendant urged that he should have been permitted in the manner proposed by him to impeach one of the witnesses for the state (Laura Williams), and, furthermore, that he should have been permitted to impeach another witness, and that witness his own witness.

As to the former, the defense proposed to impeach her (Laura Williams) by asking Howard Jettson what this witness for the state had said.

The trial court properly ruled that the question was not permissible. A witness cannot be impeached by hearsay testimony. The record does not disclose that any foundation was laid to impeach the witness, the said Laura Williams. She was never placed on her guard regarding any attempt which would be made to prove that she had made other statements or testified to other facts.

Besides, if extrajudicial assertions were to be received, proceedings might be greatly delayed or rendered practically fruitless.

That which the witness Howard Jettson heard Laura Williams say was not admissi-

ble, particularly as the question was propounded for the purpose of impeaching her.

Had she been questioned when on the witness stand, possibly she would have made statements relieving her from the charge of having sworn falsely.

That this witness was entitled to be heard before any attempt at impeachment is well settled by jurisprudence.

5. The next bill of exceptions (No. 3) by defendant's counsel is similar to that just passed upon Howard Jettson, save that it is weaker. The witness was defendant's witness. He was not taken by surprise, and no good reason is given why the defendant should have been permitted to impeach the testimony of his own witness.

6. Next in the order of bills of exceptions reserved by defendant, it appears that the prosecuting officer asked Effie Haney what relationship existed between Howard Jettson, a witness, and the accused, and what relationship between herself and Howard Jettson.

The objection of the defense to the question was similar to the objection urged in other bills. There was only one additional ground of objection, and that was that it was not permissible to show the relationship of this witness to Howard Jettson, a third person, and that it was entirely foreign to any relationship to the accused, and, in consequence, it raised the question not connected with the issues of the case.

The state's position is that it was to ascertain the credibility of the witness, her possible sympathy for the accused, and the interest felt by her in the case.

The witness is the mother of Howard Jettson, brother-in-law of the accused.

A witness may be cross-examined as to feeling between him and another witness, although nothing of the kind was elicited on the examination in chief.

The point is stated as follows:

127 La.—20

"It would be an unreasonable extension of the rule to debar the state from proving on cross-examination the relationship of defendant's witnesses to defendant and to the party referred to in the direct testimony as affecting the credibility of his testimony.

"Otherwise a biased or dependent witness, a parent to a child, brother to a sister, or other persons with strong motives for prejudice or to partiality, might be put on the stand by defendant, and, in the absence of any questions by his counsel on the subject, the state would be prevented from putting the jury in possession of the facts of such relationship, which fact would be entitled to legitimate consideration as affecting the weight and credibility of the testimony."

Even though there is no direct relationship between the mother of the brother-in-law of the accused, who is a witness, there might be feeling in the case in regard to which inquiry may be made.

We are quite certain that this question is not ground for reversing the verdict.

7. It appears that in the course of his examination as a witness the accused testified as follows: "If I shot Mr. Millican, I don't know anything about it."

As this is an important question in the case, we copy in full the statement of the bill:

"Q. Fletcher, on your direct examination awhile ago I understood you to say that, if you shot Mr. Millican, you don't know anything about it? Did you not state when you were being brought from where you were being arrested by W. J. Millican, deputy sheriff, that you shot Tom Millican?"

(As well state here that Deputy Sheriff W. J. Millican was not related to Tom Millican, the deceased.)

The question was objected to by counsel for the accused on the ground that the cross-examination of the accused must be restricted absolutely to the evidence adduced on the direct examination, and that, as the witness had been asked no question with respect to any statement made or purported to have been made to Deputy Sheriff Millican, the question is improper on cross-examination; and that any statement that may have been made by the witness to the officer under the

circumstances above named would be a self-serving declaration not elicited by direct examination, prejudicial to the interest of the accused and improper on cross-examination, and, further, the court having previously excluded the statement said to have been made to Deputy Sheriff W. J. Millican upon objection of counsel for the defendant this is a means by which the State is attempting to introduce evidence already excluded by the ruling of the court.

The following is a statement incorporated in the bill of exceptions:

"It will be remembered that previous to this Mr. W. J. Millican, deputy sheriff, had been placed on the stand by the state for the purpose of proving the above statement by the accused, but the court at that time and out of an abundance of precaution excluded the testimony."

Learned counsel for the defendant says that to this point the statement is correct, that it coincides with the point taken, but that the following is at variance from what actually took place.

But, "after he had denied having said to Mr. Millican anything about his having shot or killed Mr. Tom Millican, the defendant had testified on his direct examination."

It is stated in the bill of exceptions, which the district judge said is correct:

"Did you not state, when you were being brought from where you were arrested to Deputy Sheriff Millican that you had shot Mr. Tom Millican?"

The witness in answer said that he had not.

This, it is stated in the bill of exceptions, was stated voluntarily.

It is with reference to this that the bill states that previous to this the said deputy sheriff had been placed on the stand by the state for the purpose of proving the contradictory statement of the accused.

But, as the accused had not yet testified in regard to the facts above mentioned, the court ruled the testimony out, and declined to hear the officer upon the subject, but, after the accused had taken the stand in his own behalf and had denied having said to Mr. Millican, deputy sheriff, anything about his having killed or shot Tom Millican, it was then that Millican, for the purpose of impeaching the testimony of the accused, was allowed to testify as above stated.

In other words, when the objection was made the first time, it was sustained because the accused had not testified regarding the particular point. After he had testified in regard to the particular point, the court overruled defendant's objection, and allowed the district attorney to propound the question to the witness Millican for the purpose of contradicting the witness.

In so far as it is contended that the fact sought to be proven was a collateral fact, it must be said that, if it was, then the testimony was not admissible, for it is settled that a witness cannot be examined as to any fact which is collateral and irrelevant solely for the purpose of impeaching him. State v. Wiggins, 50 La. Ann. 330, 23 South. 334.

Wishing to meet the issue from that point of view, the State having conceded for a moment that it is a collateral fact, then the learned counsel for the State cited State v. Murphy, 45 La. Ann. 958, 13 South. 229, and said that the testimony would be admissible under the cited decision.

We only noted this point to correct the impression that the cited decision sustained any such view as expressed by the district attorney.

That decision does not support the position that a witness can be examined on a collateral and irrelevant issue for the mere purpose of impeaching him.

Moreover, that is not the issue here.

The fact sought to be proven was not a collateral fact. The question was pertinent to the issue.

The position of defendant, through his

learned counsel, is different from the recital of facts in the bill indorsed by the trial judge that his objection was made before the question was answered by the defendant, and that the district attorney is in error in saying that the accused had denied having said to "Millican, deputy sheriff, anything about his having killed or shot Mr. Tom Millican"; that the accused had never been asked that question, nor had any reference been made to the deputy sheriff in his statement as a witness to the jury.

These differences about facts are always regrettable, and place the court in an embarrassing position.

Under repeated decisions, we must take the statement contained in the bill that the accused testified that if he said to Millican, deputy sheriff, that he had shot, as stated, "I don't know anything about it," when the court permitted the question before mentioned to be asked.

It follows from the foregoing that it was pertinent to propound the question to the deputy sheriff as he tended directly to contradict the accused as a witness in his own behalf. A witness testifying in his own behalf may be contradicted by propounding questions directly pertinent to the issue before the court to show a different state of facts from that testified to by the accused.

We repeat that which we have said at first: It was not a collateral fact.

In Wigmore on Evidence, the following was said:

"There are two different groups of facts to which evidence would have been admissible independently of the contradiction:
"(1) Facts relevant to some issue in the case.
"(2) Facts relevant to the discrediting of a witness."

The issues in the case indicate that the fact sought to be proven was relevant, and, furthermore, that it had some tendency to discredit the witness.

From that point of view we have not found the error urged against the ruling of the trial judge.

8. The next bill of exceptions was taken to the court's ruling in permitting the district attorney to ask the witness if he knew Cleveland.

This objection is disposed of by the statement of the trial court in its ruling, for the court says the ruling was not taken advantage of by the district attorney. The question was not insisted upon by the district attorney. It was withdrawn, and the facts were not given to the jury.

It follows that, according to the uncontradicted statement, there was not the least prejudicial error committed. It was a mere blank as the testimony never reached the jury.

A similar objection was made to the following question:

"Where were you in the year 1898?"

The court says that it was the same as to this question. It was allowed by the court, but, as in the former case, the question was withdrawn, and the testimony was not heard by the jury.

The decedent during his illness, after he had been wounded, gave to the barber, by whom he was shaved while he was at the sanitarium, some account of the shooting which resulted in the wounds from the effects of which he died.

The defendant sought to prove the facts stated in the conversation between the barber and the decedent.

The counsel for the State objected on the ground that it was hearsay testimony, not introduced as a dying declaration, and offered although no foundation had been laid for admitting the declaration; in other words, there is no evidence tending in any way to prove that decedent was even apprehensive that he would die.

The State was the interested authority.

She was seeking to enforce that which her officers conceived was required by her laws.

The decedent was not the party concerned, but the state. The testimony of accused was subject to the same rule as that of any other witness.

If that statement were admissible, it would have the effect of obliterating all laws regarding dying declarations.

This we must decline to do.

Lastly, the defendant through counsel has offered affidavits to prove that during and since the trial there were prejudices against him which operated very much against him and prevented a fair trial.

These affidavits are entirely extrajudicial. They cannot be considered. The question presented cannot be brought before an appellate court by ex parte affidavits.

We have carefully reviewed every point presented.

As relates to law, the accused has had a trial in accordance therewith.

As to the guilt or innocence of the accused, that is a matter within the jurisdiction of the court by which he was found guilty.

For reasons assigned, the verdict, sentence, and judgment are affirmed.