(53 South. 959.)

No. 18,518.

STATE v. JONES.

(Jan. 3, 1911.)

*(Syllabus by Editorial Staff.)*

1. CRIMINAL LAW (§ 519*) — CONFESSIONS — VOLUNTARY NATURE.

While a deputy sheriff was taking accused, charged with arson, to jail, he made a statement to her with reference to her para-

mour and another woman, whereupon accused became very indignant, and in the course of the conversation confessed to having committed the arson. *Held*, that the confession could be rejected only on the assumption that the deputy sheriff had deliberately given false testimony.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1163–1174; Dec. Dig. § 519.*]

2. CRIMINAL LAW (§ 417*) — ADMISSIBILITY OF EVIDENCE—ADMISSIONS BY THIRD PERSON.

In a prosecution for arson, proof of admissions both verbal and those made in a letter by a third person not charged with the crime that he burned the house in question is not admissible in evidence, and, if sworn to, would have been admissible only to show that they were made, and not for the purpose of having them accepted as true.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 417.*]

3. CRIMINAL LAW (§ 723*)—TRIAL—REMARKS OF DISTRICT ATTORNEY.

In a prosecution of a colored woman for arson in a county in which a number of years before there had been an armed conflict between the colored people and the white people, and in which the white people had only been saved from massacre by the prompt action of the white men, the district attorney in his remarks to the jury spoke of accused as standing in the courtroom "in a place like this with its past history, and referring familiarly and contemptuously" to certain white persons named, and argued from that fact that a confession which she made to the deputy sheriff who arrested her was not inspired by fear. *Held*, that it was error to make the remark, as it tended to excite race prejudice.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1676; Dec. Dig. § 723.*]

Appeal from Thirteenth Judicial District Court, Parish of Grant; W. F. Blackman, Judge.

Mary Jane Jones was convicted of arson, and she appeals. Reversed and remanded.

C. H. McCain and J. A. Williams, for appellant. Walter Guion, Atty. Gen., and John R. Hunter, Dist. Atty. (R. G. Pleasant, of counsel), for the State.

PROVOSTY, J. The defendant, a colored woman, was convicted of the arson of a cabin, and was sentenced to five years in the penitentiary.

On her arrest, in the parish of Grant, where the offense was committed, she was, for some reason not explained, taken to the jail of the parish of Rapides. On the way, on the train, she made a confession to the deputy sheriff who had her in charge. When this confession was sought to be proved, she objected that it had not been voluntary; and, as a witness in her own behalf, she testified that the confession was induced by fear and excitement brought on by an announcement made to her by the deputy sheriff that he was taking her to the penitentiary. The deputy sheriff says that he made that remark in a jocular vein, as he explained to her immediately, telling her the truth with regard to their destination; and that what induced the confession was his telling her that her paramour, Johnson Boyd, was "getting shut" of her, and that another woman, Mary Beek, "had turned her up"; that, on receiving this information, she became violently angry, and said "If you will give me a pistol I will kill both the G—— d—— s—— of b———s, and you can then hang me"; and went on in a tirade against Mary Beek and Johnson Boyd, in the course of which she made a clean breast of the arson. Under these circumstances, the confession could be rejected only on the assumption that the deputy sheriff had deliberately given false testimony.

The defendant also complains of the refusal to allow her to prove admissions made by one Eli Williams, both verbally and in a letter, that it was he who had burned the cabin in question. It seems to be well settled that an admission of guilt of this kind made out of court by a third person is inadmissible, whether verbal or written. State v. West, 45 La. Ann. 928, 13 South. 173; Id., 45 La. Ann. 15, 12 South. 7; 16 Cyc. 1199. The sworn statements made out of court are admissible where sought to be proved simply to show *rem ipsam*—that they were made—but not for the purpose of having

them accepted as true. In the instant case, the purpose was to have the statement accepted as true.

Lastly, defendant complains of remarks made by the district attorney in his closing argument to the jury. The parties do not agree as to what the remarks were. In the bill of exceptions as prepared by defendant's counsel the remarks are said to have been, as follows:

"Williams says that in this case I have lost control of myself; that in his speech he states to you that he has never seen me lose such control of myself in his life. Gentlemen, I want now and here, in reply to this charge of Mr. Williams, to enter an emphatic plea of guilt. I did lose control of myself; every drop of my white man's blood did boil in me, and the white man's blood of other men in this courthouse rose up in righteous indignation when this negro woman on trial, in a crowded courthouse in the parish of Grant, and in the town of Colfax, with its past history, used slanderous and —— language against the officers of Grant parish and against white men."

The Judge's per curiam is as follows:

"On the witness stand, defendant swore that she was so frightened she did not know what she said. The district attorney, in argument in reply, commented on the language used by the defendant in speaking of those to whom she made the confession, and her manner, to illustrate that she was not a timid woman easily frightened, and in no way made an appeal to race prejudice against the accused. This note of the district attorney's is included as a part of my statement."

The note of the district attorney here referred to reads as follows:

"The language quoted positively was not excepted to. In discussing boldness of accused I said: 'She sat on that witness stand in the courtroom, in a place like this, with its past history, and referred familiarly and contemptuously to David Clinton et als.;' and any one who would do that is not timid."

Between these two reports of what the district attorney said, the difference is more in the words than in the meaning. Leaving out of consideration that part of this bill about boiling blood and loss of control, and accepting the judge's version, there yet remains an appeal to race prejudice. The white men on the jury are called upon to bear in mind that this negro has dared to refer familiarly and contemptuously to white men; and these white jurymen are at the same time called upon to bear in mind that in 1873 nothing but the bravery and the quickness of action of the white men of the country around Colfax saved the white people of Colfax from massacre by the negroes. This last was what was meant by the words of "in this courtroom, in a place like this, with its past history." In 1873, the negroes rose in arms, and for a time, the white men, women, and children of Colfax stood in danger of massacre or worse at their hands. The whites of the neighboring country quickly got together. The negroes, to the number of over 500 took refuge in the courthouse, the whites fired the building, and those of the negroes that did not perish in the fire were shot down as they sought to escape from the flames. A trench was dug on the spot, and the unconsumed negro corpses were thrown in it. Two white men lost their lives—shot down by the negroes. Several others were dragged before the partisan federal tribunals of that time. The new courthouse, that in which the trial was being had, was built on the site of the old. It was this bloodiest, deadliest, and darkest chapter of the history of the two races in this state—this appalling holocaust to racial antagonism and hatred—the white men on the jury were called upon to bear in mind.

It is hardly necessary to say that we acquit the learned district attorney of all intention to appeal to race prejudice or take any unfair advantage of the defendant. The case, as we view it, stands pretty much on a parallel with one where the district attorney, for illustrating his argument, had handled before the jury, in a case of murder, the pistol with which the crime had been committed, and the weapon had accidentally gone off and killed the accused at the bar. In both cases the harm has been done, though

unintended. We trust prosecuting officers will take warning and understand that on the trial of negroes before white juries the relation of the two races is dangerous ground to tread on in their closing addresses.

Judgment and verdict set aside, and case remanded for trial according to law.

BREAUX, C. J., concurs.