(126 So. 434)

No. 30154.

**STATE v. NASH.**

Nov. 4, 1929.

Rehearing Feb. 3, 1930.

A. Leonard Allen, of Winnfield, for appellant.

Percy Saint, Atty. Gen., Harry Fuller, Dist. Atty., of Winnfield, and E. R. Schowalter, Asst. to Atty. Gen., for the State.

LAND, J. Defendant, indicted for murder, was found guilty as charged without capital punishment, and was sentenced to the penitentiary for life.

He has appealed from the conviction and sentence, and presents to this court for review nine bills of exceptions.

### Bill No. 1.

The district attorney, on direct examination, propounded the following question to a state witness: "I ask you this, if any of these three parties in the restaurant just before the shooting, Maggie Crumpton, or Ruth Jackson, or Marguerite Smith, was in there, tell me which one it was?"

The objection by defendant's counsel to this question as leading is without merit, as the question does not suggest any particular answer. The witness had previously testified that there were several parties in the room, and his answer to the question was that "Marguerite Smith was the only one in there that I could see."

### Bill No. 2.

The district attorney, on direct examination, propounded the following two questions to a state witness: "Now, I am going to ask you this, you didn't tell the coroner's jury about it when you were asked by me, and the coroner and others were trying to investigate this, about this boy, telling him to drop the gun three times."

The next question was: "I am going to ask you if you didn't make this statement: 'I was running when the gun fired and didn't see him'?"

These questions were objected to by defendant's counsel on the ground that it was an attempt on the part of the district attorney to impeach his own witness, without any foundation having been laid.

In the per curiam to this bill, the trial judge states: "These questions were admissible as the witness was unwilling, hostile, and the State pled surprise, and under such

condition was entitled to ask leading questions."

The ruling is correct. It is provided in Code of Criminal Procedure, art. 487, that: "No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements."

It is also well settled that, where a party is bona fide surprised at the unexpected testimony of the witness whom he has voluntarily called, he may be permitted to interrogate him as to previous declarations inconsistent with the testimony given, the object being to test the witness's recollection, and lead him, if mistaken, to review what he has said. To ask a witness a question for the purpose of refreshing his memory is not to impeach him. Marr's Crim. Juris., vol. 2, p. 991, § 648, par. 3.

### Bill No. 3.

Defendant's counsel, on cross-examination of a state witness, asked the following questions: "Percy, you say that almost immediately after the shooting that Portee, the wounded negro, ran over to your house and asked if you had a flash-light or watch to look for his gun and cap? A. Yes, sir.

"At the same time, just immediately following the shooting, I will ask you if it is not a fact that this same Portee didn't ask you that night, a period of four or five minutes after the shooting, if he had not killed Sonnie Nash?"

■ To these questions the district attorney objected on the grounds that the testimony sought to be elicited is hearsay, irrelevant, immaterial, and no part of the res gestæ; and that counsel for defendant, in stating that the question was asked witness in 4 or 5 minutes after the shooting, has assumed a state of facts not shown to exist.

The objection was sustained by the trial judge, first, for the reason that the question assumed a state of facts not shown to exist, since the witness had testified that, some 20 or 30 minutes after the shooting, the wounded negro, Portee, came to his house and asked for a searchlight; and, secondly, for the reason that the testimony, attempted to be introduced, was clearly hearsay and not a part of the res gestæ; that the witness, Portee, could probably have been obtained by the state or the defense, if due diligence had been used; and that the defense could then have placed Portee on the stand to testify as to what he did and said, if same was admissible at all.

The ruling of the trial judge was correct for two reasons: First, it is not permissible, in interrogating a witness, to attribute to him a statement not made by the witness as the basis of the question propounded to him.

■■ In the second place, it appears, from the per curiam to this bill, that some 20 or 30 minutes had elapsed after the wounding of Portee, at whom the accused had intentionally fired, and after the killing by the accused of the deceased, Irvin Franklin, a bystander, before Portee had any communication with the state witness, Percy, who was under cross-examination by counsel for defendant.

As defined in the Code of Criminal Procedure, art. 447: "Res gestæ are events speaking for themselves under the immediate pressure of the occurrence, through the instructive [instinctive], impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrat-

ing the events. What forms any part of the res gestae is always admissible in evidence."

To make declarations a part of the res gestæ they must be contemporaneous with the main fact, not, however, precisely concurrent in point of time. Time does not absolutely and alone determine whether a statement is or is not a part of the res gestæ—that is decided by the circumstances of each case—and no inflexible rules as to the length of the interval between the act and declarations of the parties can be formulated. Marr's Crim. Juris., vol. 2, p. 877.

As illustrations of the above rule: "A declaration made by a party shot at the time he was shot, or within a few seconds thereafter, or within the time it took witness to run 440 feet, or to walk rapidly about a half a block, or within two minutes, or within ten minutes is a part of the res gestæ; but a declaration by deceased ten minutes after the fatal wound was inflicted, and seventy yards from the place where inflicted, charging that the accused had shot him, is not. * * * When, nine or ten minutes after the shooting, the wounded man having been taken to a physician a distance of 300 to 400 yards, the physician said to him: 'Before I put my hands on you, who did the shooting?' the statement of of the wounded man in response to this injunction was not the events speaking through him, but he speaking about the events, and therefore no part of the res gestæ." Marr's Crim. Juris., vol. 2, p. 878.

The same rule must apply to any statement or communication made by Portee to the state witness, Percy, 20 or 30 minutes after the shooting. The ruling of the trial judge is correct, in sustaining the objection of the district attorney that the evidence sought to be elicited is hearsay and not a part of the res gestæ.

### Bill No. 4.

The same ruling also applies to this bill, in which defendant's counsel asked a state witness "to state if it is not a fact that Portee stated to you next morning and wanted to know if he had hit or killed the man he had shot at Winnfield (meaning the defendant) the night before."

Fourteen hours had elapsed since the shooting, and Portee was then in the town of Hodge, at the time the alleged statement was made.

### Bill No. 5.

It is stated in this bill that: "The witness Bryant Sholars, sheriff, having been interrogated by the State and having replied in answers to questions by the State that the defendant told him he left town that night and went up above Ruston (meaning the night of the homicide), was asked the following question on cross-examination, after having testified that the defendant surrendered the next day: 'Mr. Sholars, did Sonny Nash tell you why he left that night?'"

The trial judge sustained the objection of the district attorney to the question on the ground that it is irrelevant and immaterial, and a self-serving declaration, and not a part of the res gestæ.

Then the following question was propounded to the witness by counsel for defense: "I will ask you if at the same time the defendant, negro, did not tell you that the reason he left town was that when he found out that he had actually killed one of his best friends it unnerved him and in such suspense he did not know just what to do, and as soon as he got out of town a little while and thought it out he immediately returned and surrendered?"

The same objection was made to this question, followed by the same ruling.

In the per curiam to this bill, the trial judge states that: "The objection to this question was sustained as the Court was of the opinion that the question was irrelevant and immaterial, and a self-serving declaration, and no part of the res gestæ as more than twenty-four hours had intervened since the shooting and the time that the questions refer to."

The court also held that the defendant had a right to explain flight by any competent testimony.

The general rule is that the declarations of an accused in his own behalf are inadmissible, but to this general rule there are exceptions, for example, when they are part of the res gestæ, or shown to be connected with his confession testified to by another witness. Marr's Crim. Juris. vol. 2, p. 844, § 550.

Manifestly, the reason why defendant returned and surrendered, after going to another town, is not a part of the res gestæ. The trial judge, having found that such reason was based upon a self-serving declaration, in which we concur, properly sustained the objection to the question. This ruling did not deprive defendant of the right to explain his flight by any competent testimony.

### Bill No. 6.

Counsel for defense, on direct examination, propounded to a witness for defendant the following question: "I will ask you to state what Portee said there in your presence while he was in great pain and agony and just after the shooting?"

In the next question propounded to the witness, he was asked if Portee said that he knew he had shot at defendant, but did not know whether or not he had killed him.

These questions were objected to as eliciting hearsay, and evidence not a part of the res gestæ. The objection was sustained by the trial judge, who states that more than an hour had intervened between the time of the shooting and the time to which these questions refer.

The ruling was correct for the reasons already assigned under bill No. 3.

### Bill No. 7.

Counsel for defendant asked a defense witness what statement Portee had made while he was at the doctor's office, and also what statement he had made while he was in an automobile on his way to the doctor's office.

It appears that 50 or 60 minutes had elapsed from the time of the shooting to the time to which the questions relate. The objection to these questions as eliciting hearsay, and evidence forming no part of the res gestæ, was properly sustained by the trial judge.

### Bill No. 8.

A defense witness was asked by counsel for defendant if, on the night of the homicide, he had heard defendant make inquiry for an officer, town marshal, at the place of business of Mary Scott. This question was objected to by the state as a self-serving declaration, and this objection was sustained by the court, on the ground that the testimony was not admissible because it was irrelevant, immaterial, hearsay, and self-serving.

It appears, from the per curiam to this bill, that more than 40 minutes had intervened between the time of the inquiry for the officer, and the time of the killing, and that Mary Scott later was placed on the stand by defendant and testified, without objection, that some time during the night, before the killing, defendant did come to her place of business and inquired if she had seen Mr. Jolly, the town marshal.

The bill is without merit.

### Bill No. 9.

■ This bill was reserved to the overruling of a motion for new trial, based on the ground that the verdict is contrary to the law and the evidence; upon the ground of the absence of the witness, Portee, who was not summoned at all by defendant; and upon the ground of the alleged finding of newly discovered evidence.

The trial judge, in overruling the motion for new trial, was of the opinion that due diligence had not been used by defendant to secure the presence of Portee; that, by the exercise of due diligence, all of the alleged newly discovered evidence could have been obtained before conviction, as the witnesses, the defendant, and defendant's counsel all resided in the town of Winnfield; and that the verdict was amply justified by the evidence adduced at the trial.

We find no good reason for taking a different view of the matter.

We note that no brief on the part of defendant has been filed.

The conviction and sentence are affirmed.

O'NIELL, C. J. (dissenting). An important fact which is not mentioned in the prevailing opinion in this case, and which should affect materially the rulings on bills of exception No. 3, No. 4, No. 6, and No. 7, is that the defendant unintentionally killed an innocent bystander, Irvin Franklin, in the shooting of the man named Portee, with whom the defendant had a personal difficulty. The only issue in the case before the jury was whether the defendant was justified in shooting Portee, under the law of self-defense; for, if the defendant was justified in shooting Portee, he was not guilty of either murder or manslaughter in the accidental killing of the bystander, Franklin; and, vice versa, if the defendant would have been guilty of murder had he killed Portee, he was guilty of murder in killing the innocent bystander; and, if he would have been guilty of manslaughter had he killed Portee, he was guilty of murder in killing the innocent bystander. For that reason, the admissions made by Portee, after the difficulty, with regard to his guilt, as referred to in the bills of exception No. 3, No. 4, No. 6, and No. 7, were admissible in evidence under the law of self-defense. The fact that such admissions on the part of Portee did not form part of the res gestæ has nothing to do with the case. I respectfully dissent, therefore, from the rulings on these four bills of exception.

I dissent also from the ruling on bills No. 5 and No. 8. There is no justice in the ruling that, after the sheriff testified, as a witness for the state, that the defendant had told him that he (the defendant) had left the parish after the shooting, and on the same night, the defendant was not allowed to ask the sheriff if he (the defendant) did not, at the same time, tell the sheriff why he had left the parish that night. The purpose of the sheriff's testimony was to prove—as far as it might prove—that the defendant fled from justice after the shooting; and, surely, the defendant had the right to insist that the sheriff should tell all that he (the defendant) said in regard to his leaving the parish. The statement, in the prevailing opinion, that the declaration of the defendant to the sheriff, as to why he (the defendant) left the parish, was a self-serving declaration, and was not a part of the res gestæ, is entirely beside the proposition of allowing the sheriff to tell the damaging part of what the defendant said, and not requiring him to tell the explanatory part of what the defendant said, about leaving the parish. The statement in the prevailing opinion that the trial judge "held that the defendant had

a right to explain flight by any competent testimony," does not justify his ruling excluding the competent and important testimony explaining away the presumption of flight.

## On Rehearing.

ST. PAUL, J. The defendant was indicted for the murder of one Irvin Franklin. He was found guilty "without capital punishment," and sentenced to imprisonment for life. His appeal presented nine bills of exception, all of which were found without merit in the opinion herein first handed down, and his conviction and sentence were accordingly affirmed.

He applied for a rehearing which was granted; and the case is now before us again.

In his said application he complains only of our ruling on bills No. 3, 4, 6, and 7, which are all of the same nature, and of our ruling on bill No. 5, which is of a different tenor. Thus, in his brief in support of his application for rehearing, he says: "The errors complained of on which defendant seeks a rehearing may be grouped into two for the sake of brevity, viz.: Failure to admit statements made by Portee under the plea of self defense, and secondly, failure to permit the sheriff to relate the full conversation of the defendant upon his surrender." As our rulings on the other bills, Nos. 1, 2, 8, and 9, are not complained of, and are clearly correct, we will not revert to them, but will confine ourselves to the matter complained of on the application for rehearing.

## I.

The contention of the defendant was that he had a difficulty with one Portee, who had threatened him with a pistol; that defendant had left the place where the difficulty occurred, to seek for the town marshal; that not finding the marshal, he borrowed a shotgun for his own protection against said Portee who had threatened to take his life, and returned to the building in which the difficulty had occurred and in which he (the defendant) had his sleeping apartment; that whilst seeking his room he inadvertently came upon said Portee, who again threatened him with a pistol; whereupon, in order to save his own life, he fired at said Portee, wounding him only, but accidentally shooting and killing the deceased, a bystander.

## II.

As to bills Nos. 3, 4, 6, and 7: Portee was summoned by the state, but could not be found. He was therefore not a witness in the case, and the matter complained of in these bills is not related to any effort to contradict or impeach Portee, but was an effort to introduce as original evidence, in support of the self defense, certain declarations made by said Portee from half an hour to 12 hours or more after the killing.

These statements of Portee were objected to by the state, on the ground that they were no part of the res gestæ, and to admit them would be to admit hearsay evidence.

The original opinion herein sufficiently shows that the declarations of Portee, thus excluded, could not be part of the res gestæ.

Nor can such statements be received on the ground that they were admissions made by said Portee, against his own interest, and tending to show that said Portee had attacked the defendant, and that defendant had only shot in self-defense.

Even if said admissions had been made by the deceased himself, they would not have been admissible, unless made as dying declarations, or constituting part of the res gestæ.

State v. Fletcher, 127 La. 602, 53 So. 877. And much less can such statements when made by other parties be admitted; they are mere hearsay, even though they tend to exculpate the accused and incriminate the person making them. State v. West, 45 La. Ann. 14, 12 So. 7; State v. Mitchell & Young, 107 La. 618, 31 So. 993; State v. Jones, 127 La. 694, 53 So. 959.

### III.

As to bill of exception No. 5: The defendant surrendered himself the day after the killing. So far as we can see by the record, the only evidence that in the meanwhile the defendant had fled is the testimony of the sheriff that the defendant had told him that he had left town on the night of the killing and had gone to an adjoining parish before surrendering. But whether there was or was not any other evidence to that effect, the fact remains that this admission was introduced to prove flight and the presumption of guilt resulting therefrom.

The sheriff was thereupon asked by the counsel for defendant: "Did Sonny (Almond) Nash tell you why he left town that night?" And again: "I will ask you if at the same time the defendant did not tell you that the reason he left town was that when he found out he had actually killed one of his best friends it unnerved him, and in such suspense he did not know what to do, and as soon as he got out of town a little while and thought it out he immediately returned and surrendered?"

This was objected to by the state and excluded by the trial judge on the ground that it was irrelevant and immaterial, no part of

the res gestæ, and merely a self-serving declaration.

We think that the ruling was erroneous. The evidence was indeed no part of the res gestæ, but it was relevant and material, since it was competent to explain the flight.

But whilst the alleged declaration of defendant, if made at some other time would be a mere self-serving declaration, nevertheless, the declaration here made was part of, and immediately connected with, an admission sought to be used against defendant. And being such, the defendant was entitled to have the admission laid before the jury in its entirety. Such was the law even prior to the adoption of the Code of Criminal Procedure (Act No. 2 of 1928). State v. Thompson, 116 La. 829, 41 So. 107. But since the adoption of that code the rule is now statutory, article 450 of said code reading as follows:

"Art. 450. Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford."

We adhere to our ruling on Bills 3, 4, 6, and 7. But we now think that the ruling complained of in Bill No. 5 should have been reversed.

### Decree.

It is therefore ordered that verdict and sentence herein appealed from be now reversed and set aside and the case remanded to the court below for a new trial according to law.

O'NIELL, C. J., concurs in the decree, but not in the ruling on bills Nos. 3, 4, 6, and 7.