194 So.2d 729

**STATE of Louisiana**

**v.**

**Dorthy Mae REESE.**

**No. 48328.**

Jan. 16, 1967.

Rehearing Denied Feb. 20, 1967.

Sam J. D'Amico, Baton Rouge, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for appellee.

FOURNET, Chief Justice.

Dorthy Mae Reese, having been tried, convicted, and sentenced to four years in the penitentiary at hard labor under a Bill

of Information charging her with manslaughter [1] for the death of Patricia Ann Blades, resulting from an abortion, has appealed, relying for the reversal thereof on certain errors allegedly committed during the course of the trial to which timely objections were made and Bills of Exceptions reserved and perfected.[2]

The first two bills were reserved when the trial judge refused to excuse for cause two prospective jurors, Albert J. Anderson and Dr. Kenneth E. Jones, the former because of his position as a deputy sheriff of the parish and the latter because he could use his technical knowledge to advise other jurors, thus allegedly making it impossible for either to decide the case objectively on the evidence.

There is no merit to these bills. Neither juror lacked the qualifications required for jury service in this state, or was found to be incompetent to serve under the discretion vested by law in the trial judge,[3] and an examination of the evidence touching on this phase of the trial fails to disclose either prospective juror was disqualified for any of the special causes enumerated in R.S. 15:351.[4] Moreover, in-

---

1. Manslaughter is defined as "A homicide committed, without any intent to cause death or great bodily harm. (2) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30, or of any intentional misdemeanor directly affecting the person; * * *.". R.S. 14:31(2) (a). The crime of abortion is a felony because punishable by imprisonment at hard labor, but not one of those enumerated in Article 30 of the Criminal Code. See, R.S. 14:2 and 14:87.

2. Although objections were timely made to a rent receipt connected with the case, and also to remarks of the prosecuting attorney in his closing argument, and bills reserved when these objections were denied, defense counsel did not perfect these bills and present them to the trial judge for consideration.

3. To qualify for jury service in Louisiana a person must be "a citizen of this state, not less than twenty-one years of age, a bona fide resident of the parish in and for which the court is holden, for one year next preceding such service, able to read and write the English language, not under interdiction or charged with any offense, or convicted at any time of any felony, provided that there shall be no distinction made on account of race, color or previous condition of servitude; and provided further, that the district judge shall have discretion to decide upon the competency of jurors in particular cases where from physical infirmity or from relationship, or other causes, the person may be, in the opinion of the judge, incompetent to sit upon the trial of any particular case. In addition to the foregoing qualifications, jurors shall be persons of well known good character and standing in the community." R.S. 15:172.

4. R.S. 15:351 states the special causes for which a juror may be challenged are "(1) That he is not impartial, the cause of his bias being immaterial * * *;" (2) that the relations "by blood, marriage, employment, friendship or enmity, between the juror and the accused, or between the juror and the person injured, are such that it must be reasonably believed that they would influence the juror in coming to a verdict;" and "(3) That the juror served on the grand jury which found the indictment, or on a petit jury which once tried the defendant for the same offense, or on the coroner's jury that investigated the homicide charged against the accused."

asmuch as the defendant did not exhaust all of her peremptory challenges, she cannot complain of the trial judge's refusal to permit these jurors to be challenged for cause. R.S. 15:353.[5] See, State v. Nichols, 50 La. Ann. 699, 23 So. 980; State v. Bradford, 164 La. 423, 114 So. 83; State v. Thornhill, 188 La. 762, 178 So. 343; State v. Breedlove, 199 La. 965, 7 So.2d 221; State v. Henry, 200 La. 875, 9 So.2d 215; and State v. Simpson, 247 La. 883, 175 So.2d 255.

The next four bills (3 through 6) are levelled at the trial judge's refusal to maintain defense objection to testimony with respect to declarations by the deceased, and are all predicated on the contention the testimony sought to be excluded should have been disallowed as hearsay since (1) it formed no part of the res gestae, and (2) if admissible as a dying declaration, one of the recognized exceptions to the hearsay rule, then because no proper foundation therefor had been laid.

The evidence attached to these bills reflects that Miss Blades, a 21-year-old school teacher, who had theretofore always lived with her parents, moved into a garage apartment rented from Mrs. Shirley Cutrer, a personal friend and former classmate, on Wednesday afternoon July 21, 1965. Bill of Exceptions No. 4 was reserved when Mrs. Cutrer was permitted to testify that at the time she rented the apartment the deceased said she was pregnant. Elaborating further after the objection was overruled, Mrs. Cutrer also revealed Miss Blades further stated "she had found somebody that was neat and clean and could do a good job * * * an abortion * * * and * * * she had confidence in her." When Mrs. Cutrer was permitted to state what Miss Blades said about her physical condition when, the next morning around 8:00 a. m., she came to borrow eggs and grease, i. e., that she "had had it, it is over with, and I am having cramps," Bill of Exceptions No. 5 was reserved. Bill of Exceptions No. 3 was reserved when Mrs. Cutrer was allowed to testify with respect to statements made by the victim about 1:00 a. m. on July 23, 1965, at the time Mrs. Cutrer was called by her husband (who, in answer to a knock at the back door, met the accused, asking to be permitted to use the telephone to call a taxicab) when he observed that Miss Blades, who had come up behind the accused, slumped over and passed out on the kitchen floor by the back door and was bleeding profusely, i. e., that

5. This section provides: "No defendant can complain of any ruling sustaining or refusing to sustain a challenge for cause, unless his peremptory challenges shall have been exhausted before the completion of the panel; moreover, the erroneous allowance of challenges for cause affords the defendant no ground of complaint, unless the effect of such ruling is the exercise by the prosecution of more peremptory challenges than it is entitled to by law, or unless the defendant by such ruling is forced to accept an obnoxious juror."

when the victim revived somewhat on being carried to the couch in the living room, she begged the accused: "Dot, please don't leave me * * *"[6] The sixth bill was reserved when Dr. S. C. McConnell, Miss Blades' physician, who had been called to meet her at the hospital, was permitted to testify with respect to what the deceased told him about her condition and its cause when he questioned her preparatory to treating her.

▮▮ Hearsay evidence, which does not derive its value solely from the credit given the witness himself, but rests, in part, on the veracity and competency of some other person, is generally inadmissible to prove or disprove a material fact. "The reason for this rule of exclusion is that hearsay is not subject to the ordinary tests required by law for ascertaining its truth, the author of the statements not being exposed to cross-examination in the presence of a court of justice, and not speaking under the penal sanction of an oath, there being no opportunity to investigate his character and motives, and his deportment not being subject to observation." 10 RCL 958, Section 132. However, the hearsay rule is one of the boadest in the field of evidence and yields to numerous exceptions that over the years have become as well established as the rule itself, two of these being (1) statements of a deceased person given in contemplation of death, commonly known as "dying declarations," and (2) evidence concerning matters incidental "to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without a knowledge of which the main fact will not be properly understood," commonly referred to as the res gestae. Included in this are all declarations or exclamations uttered by the parties which are made under such circumstances as to exclude the presumption they are the result of premeditation or design and which are calculated to throw light on the motives and intention of the parties. 10 RCL 974, Section 157.

▮ Although the courts have not found it easy to determine just when a declaration is admissible as a part of the res gestae, each case depending upon its particular circumstances, the tendency is to extend rather than narrow the scope of the introduction of evidence as a part of the res gestae, because the ultimate object of the introduction of all evidence is the ascertainment of facts as a reasonable means of ascertaining the truth. Consequently, acts and declarations have been brought

---

6. Both the Cutrers also stated that in thus begging the accused not to leave her she said: "Don't let me die." The victim was then taken into the bathroom by Mrs. Cutrer and the accused, where she ▬▬▬ was cleaned up and wrapped in a sheet, and, the Cutrers feeling medical and ambulance service was needed, Mr. Cutrer then took the accused in his own car to a point in the city designated by her.

within the doctrine if they are connected with, and grow out of, the act or transaction in such a way as to form one continuous transaction, provided they, in some way, illustrate, elucidate, qualify, or characterize the act, and, in a legal sense, are a part of it. As a result, "Incidents offered as res gestae may be separated from the act by a lapse of time more or less appreciable, provided they grow out of and are in a legal sense immediately connected with the litigated act." 10 RCL 975–977, Sections 157–160. See, also, 22A C.J.S. Criminal Law §§ 662(1)–663, pp. 660–677; 20 Am.Jur. 400–418, Sections 450–479, and pages 553–578, Sections 661–685; 1 Wharton on Criminal Evidence 624, Sections 279, etc.

 As stated in Corpus Juris Secundum, "the res gestae is not confined to the act charged but includes acts, statements, occurrences, and circumstances which are substantially contemporaneous with the main fact and so closely connected with it as to form a part of a continuation of the main transaction and to illustrate its character." § 662(1), page 663. Accordingly, hearsay statements in answer to questions are properly a part of the res gestae, and the admissibility of any particular evidence as a part of the res gestae is largely in the discretion of the trial judge. With respect to criminal matters, the res gestae "includes the complete criminal transaction from its beginning or starting point in the act of accused until the end is reached. Continuing acts or a series of events, transpiring before the commission of the crime, and which lead up to and are necessary or helpful to an understanding of the main event, and tend to explain the conduct and purposes of the parties are admissible as part of the res gestae." 22A C.J.S. Criminal Law § 662(4), p. 672.

The rationale of the res gestae rule and its exceptions as above expounded has been crystalized in our Code of Criminal Procedure thusly: "Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence." R.S. 15:447. "To constitute res gestae the circumstances and declarations must be necessary incidents to the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." R.S. 15:448.

 When this law is applied to the facts in the instant case, it is obvious the statements sought to be excluded under these four bills were clearly not admissible as "dying declarations" of Miss Blades. However, it is equally clear they do form a part of the res gestae, and, as such, were properly admitted into evidence by the trial judge.

The next bill involves the application of the "best evidence" rule. It is apparent from the note of evidence attached thereto that when testifying on direct examination Dr. McConnell stated that when he operated on Miss Blades on July 23, 1965, in an effort to save her life he found in, and removed from, her uterus tissue that would not have been there had the patient not been pregnant, which tissue he termed "products of pregnancy." On cross-examination, however, he admitted the pathology microscopic examination of this tissue which confirmed the pregnancy of the deceased had not been conducted by him, and defense counsel then sought to have the trial judge instruct the jury to disregard the testimony of the doctor with reference to anything he ascertained from anyone else, since this violated the best evidence rule. When the judge, instead, instructed the jury to give the doctor's testimony in this respect the weight and consideration to which they felt it was entitled, Bill of Exceptions No. 7 was reserved.

■■■ The trial judge's ruling in this respect is correct. There was no violation of the best evidence rule, for when all of Dr. McConnell's testimony is taken into consideration, it reflects he had diagnosed the case himself from his personal and expert knowledge, and the pathology report did nothing more than confirm this prior diagnosis. His testimony on this phase of the case was, therefore, properly submitted to the jury for its consideration.

The next three bills (8, 9, and 10) were taken when two witnesses were testifying with respect to abortions performed upon them by the accused. At the time they were reserved the objections urged by defense counsel were that (1) no proper foundation had been laid because the district attorney in his opening statement did not specify what instruments or drugs were used in connection with the abortions performed upon these witnesses and their names were not given as among the witnesses he intended to produce during the trial; (2) there was no evidence to show an abortion was performed in the instant case or by what means this was accomplished; and (3) there was no evidence to establish or indicate the abortion procedure used on these witnesses was used in connection with Miss Blades. However, these contentions have apparently been abandoned as counsel argued in this court, both orally and in brief, that this testimony should not have been admitted as it does not come under the exception to the rule that evidence of other crimes is inadmissible, and could not have been admitted for any other purpose than to prejudice the case against the accused in view of its "gruesome" nature, which would further have required its exclusion under the holding of this court in State v. Morgan, 211 La. 572, 30 So.2d 434.

■ While it is the universally accepted rule that when a person is on trial for his life or liberty evidence of other offenses committed by him is inadmissible, this rule is subject to a number of exceptions, as where knowledge or intent form an essential part of the crime; the offense is one of a system, to show mode of operation (R.S. 15:446);[7] or where the crime charged and the other offense are closely related and connected. 22A C.J.S. Criminal Law § 683, p. 741. See, also, State ex rel. Moore v. Reid, 129 La. 158, 55 So. 748; State v. White, 247 La. 19, 169 So.2d 894; State v. Pailet, 246 La. 483, 165 So.2d 294; and State v. Sharp, 248 La. 865, 182 So.2d 517.

In the last two cases this court held that evidence of other abortions committed by an accused were admissible for the purpose of showing intent in an abortion prosecution since such specific intent was a necessary element of the crime. In a subsequent brief filed in this court, defense counsel contends the Sharp and Pailet cases are inapposite because they were not offenses under manslaughter charges, whereas manslaughter, the crime charged here, is specifically defined as a homicide committed "without any intent to cause death or great bodily harm." Counsel thus argues that inasmuch as "intent" is not an ingredient of the crime of manslaughter, evidence of the commission of other crimes was not admissible.

■ This argument is clearly without merit. Although the defendant was charged with manslaughter, the fact remains the manslaughter resulted from the perpetration of a felony, i. e., the crime of abortion, which does require a specific intent.[8] The evidence, however, was admissible only for the purpose of showing guilty knowledge, design, motive, mode, system, or intent, and not for the purpose of establishing the guilt or innocence of the accused, as the trial judge properly instructed the jury.

■ There is also no merit to the contention the testimony of these two witnesses should have been excluded because of its gruesome nature under the holding in State v. Morgan, supra.[9] The short an-

---

7. R.S. 15:446 provides that "When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."

8. Abortion is defined in R.S. 14:87 as "the performance of any of the following acts, with the *intent* of procuring premature delivery of the embryo or fetus: (1) Administration of any drug, potion, or any other substance to a female; or (2) Use of any instrument or any other means whatsoever on a female. * * * " See, also, Footnote No. 1. (The emphasis has been supplied.)

9. State v. Morgan is not, in fact, authority for the contention relied on. The evi-

:swer to this argument is that there is nothing gruesome about this testimony. The :note of evidence attached to these bills establishes these witnesses merely give, very ·matter-of-factly, the method used by the accused in performing an abortion upon them. 'They did not go into any details or lend emphasis to any aspect of the procedure that would render it more than ordinarily revolting.

■ Bill of Exceptions No. 11 is also ·without merit, having been reserved when the trial judge refused defense motion for .a new trial that was predicated in the main on the 10 errors just disposed of. The allegations contained in paragraphs 11 and 12 of the motion refer to timely objections made during the trial. However, these must be considered as having been aban-doned for the bills were never perfected .and submitted to the trial judge for his ac-

tion, as pointed out above in Footnote No. 1; hence, they are not reviewable by us.

The contention advanced in paragraph 13 was also incorporated in and made the sole basis for the motion in arrest of judgment, to which Bill of Exceptions No. 12 was reserved when the trial judge denied it, and will be considered thereunder.

In the motion in arrest of judgment it is contended the accused was denied constitutionally guaranteed equal protection and due process of the law. because there were no women on the jury trying her, on the general venire, and, indeed, that there had been no women on any jury panel in East Baton Rouge Parish for some 30 years.

■ Not only must the error forming the basis for a motion in arrest of judgment be a substantial one patent on the face of the record, which is not true in the instant case,[10] but the Code of Criminal

---

dence sought to be excluded there consisted of two *photographs* of the victim's body, introduced for the asserted purpose of establishing the corpus delicti, although this had already been proved by the testimony of the coroner and the proces verbal of his inquest. Holding the photographs, found to be gruesome in fact, were "not at all necessary or material evidence in a criminal prosecution," they were ·excluded. However, the court reaffirmed the general rule, i. e., that where photographs constitute competent and material evidence, the fact they might tend to ·influence the jury is not a valid objection. In later cases, all explaining and distinguishing this ruling, involving photographs, this court consistently adhered to the general rule, pointing out that

the Morgan case is regarded as "a case of most unusual circumstances." See, State v. Dowdy, 217 La. 773, 47 So.2d 496; State v. Ross, 217 La. 837, 47 So. 2d 559; State v. Sears, 220 La. 103, 55 So.2d 881; State v. Solomon, 222 La. 269, 62 So.2d 481; and State v. Mc-Mullan, 223 La. 629, 66 So.2d 574.

10. R.S. 15:517 provides that "A motion in arrest of judgment lies only for a substantial defect, patent upon the face of the record." While it is possible to ascertain from the jury list here whether any members were women, this is not true of the jury panels and venires during the past 30 years. Indeed, counsel does not assert the latter as an actual fact, only as a fact to the best of his knowledge and information.

Procedure specifically stipulates failure to object to the manner of selecting or drawing a jury, or to any defect or irregularity that could be pleaded against any array or jury venire, must be urged before entering upon the trial of the case; otherwise, such objection will be considered as waived (R.S. 15:202), unless some fraud has been practiced or wrong committed that would work irreparable injury to the accused (R.S. 15:203), which has not been charged here. The reason for this rule is obvious. One cannot sit idly by and take his chance of acquittal, and, for the first time after conviction, urge objections to the jury's composition or irregularities connected therewith.

11. R.S. 15:172.1 stipulates: "No woman shall be drawn for jury service unless she has previously filed with the clerk of

Finally, under the law of this state women are not required to serve on juries unless they voluntarily indicate in writing a desire to do so,[11] and the United States Supreme Court, in Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118, where similar legislation was involved, held such statutes are constitutionally permissible since they do not exclude women from jury service, but, instead, accord them an absolute exemption unless they expressly waive that privilege.

For the reasons assigned, the conviction and sentence are affirmed.

HAWTHORNE, J., absent.

the district court a written declaration of her desire to be subject to jury service."