SUMMERS, Justice.
James Charles Curry was indicted by the grand jury of St. Tammany Parish for the murder of Mildred Acosta. He pled not guilty, was tried, convicted and sentenced to death. His appeal presents three principal contentions. La.R.S. 14:-30.
I.
A bill of exceptions was reserved to the denial of a defense motion to quash the indictment on the allegation that the death penalty was unconstitutional. After sen-fencing, a bill of exceptions was reserved to the imposition of the death penalty in response to the verdict of “Guilty as Charged” rendered by the jury. Punishment by death in Louisiana is by electrocution as prescribed by statute. La. 15:-569.
The attack upon the death' sentence is based upon the prohibition .against infliction of “cruel and unusual punishment” within the contemplation of the Federal and State Constitutions. U.S.Const. 8th amend., and 14th amend.; La.Const. art. 1 § 12. We find no merit to the contention.[1]
The control of crime and the fixing of punishment is a legislative matter. Our only inquiry can be whether, in a constitutional sense, the death penalty is cruel and unusual. The question has been answered by the Supreme Court of the United States and by this Court. And, since the pertinent clause of the Eighth Amendment to the United States Constitution is identical with Section 12 of Article I of the Louisiana Constitution, we are persuaded by the decisions of the United States Supreme Court interpreting the Eighth Amendment when we consider the meaning of Section 12 of Article I of the Louisiana Constitution.
*1002 Re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1880), is a case in which the United States Supreme Court, in upholding the constitutionality of the death penalty, said:
Punishments are cruel when they involve torture or lingering death; but the punishment of death is not cruel within the meaning of that word as used in the constitution. It implies there something inhuman and barbarous, something more than the mere extinguishment of life.
Again the holding in Kemmler was upheld in State of Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947), the Court saying:
The cruelty against which the Constitution protects a convicted man is cruelty inherent in the method of punishment, not the necessary suffering involved in any method employed to extinguish life humanely.
The traditional humanity of modern Anglo American law forbids the infliction of unnecessary pain in the execution of the death sentence.
These clear and succinct holdings, where execution of the death penalty by electrocution was involved, leave the interpretation of the United States Constitution settled. See also Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910); Wilkerson v. Utah, 99 U.S. 130, 25 L.Ed. 345 (1878).
In this State this Court has repeatedly rejected the contention that the death penalty is cruel and unusual punishment within the meaning of Article I, Section 12 of the Louisiana Constitution. Recently in State v. Cripps, 259 La. 403, 250 So.2d 382 (1971), the settled construction of Louisiana’s Constitution was summarized:
This contention is devoid of merit so far as this Court is concerned. In State v. Crook, 253 La. 961, 221 So.2d 473 (1969), we concluded, in disposing of a similar plea involving aggravated rape, that the constitutional prohibition against cruel and unusual punishment refers to those punishments that are “barbarous” and “extraordinary” and shock the conscience of civilized man; that electrocution is a common method of administering the death penalty, and that “ . . . its constitutionality has been consistently upheld.”
On the basis of these decisions and State v. Myers, 261 La. 100, 259 So.2d 27 (1972); State v. Williams, 255 La. 79, 229 So.2d 706 (1970); State v. Crook, 253 La. 961, 221 So.2d 473 (1969); State ex rel. Barksdale v. Dees, 252 La. 434, 211 So.2d 318 (1968); State v. Thomas, 224 La. 431, 69 So.2d 738 (1954); and State ex rel. Francis v. Resweber, 212 La. 143, 31 So.2d 697 (1947), we find the contention of appellant to be without merit. If these long-settled interpretations of the Constitutions are to be upset the fundamental law or *1004 dains that amendments are the prescribed procedure. U.S.Const. art. V; La.Const. art. 21 § 1.
II.
In presenting his opening statement to the jury, the assistant district attorney stated: “He (the defendant) then told Otis Armstrong, he said, T don’t have to kill you. You’re in this with me.’ ” Previously, in response to a motion for a bill of particulars, the State’s attorney replied that the State was not in possession of inculpatory statements. And, at a hearing on a motion to suppress inculpatory statements, the State’s attorney denied that the State had inculpatory statements in its possession. Again, the State denied the existence of inculpatory statements in response to a prayer for oyer. Later, during the trial, the State’s witness Otis Armstrong testified as follows:
Question: Did Curry threaten you in any way after you got home ?
Answer: Not after we got home, he
didn’t, not right then. But I was threatened by Curry and some of his friends, later on.
Question: What did Curry say ?
Answer: If I said anything, that I would be taken care of.
Defense counsel objected to the opening Statement and to the questions and answers of Armstrong at the trial. The objections were overruled by the trial judge. He was-of the opinion that the statements were: part of the res gestae.
Defense counsel argue that the prosecutor’s opening statement placed an inculpatory statement of the accused before the-jury contrary to express prohibitions contained in Articles 767 and 768 of the Code of Criminal Procedure; and the subsequent admission of these inculpatory statements in evidence was improper and furnish grounds for a new trial. Those articles provide:
Art. 767: The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant.
Art. 768: If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to the beginning of the state’s opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
Clearfy, then, the issue turns upon-whether .the remarks of the State’s attorney in the opening statement before the jury and the statement elicited from the State witness Armstrong were inculpatory statements or part of the res gestae. If the statements are part of the res gestae they are not subject to the restrictions ■ announced in Articles 767 and 768 of the. *1006 Code, but, to the contrary, -as res gestae they are always admissible. La.R.S. 15 :447.
This Court had occasion to consider this question in State v. Fink, 255 La. 385, 231 So.2d 360 (1970), where a conversation which led to the purchase of marijuana was at issue. In holding that the conversation was part of the res gestae and not subject to the requirements of Article 768 -of the Code of Criminal Procedure, we said:
As used in Article 768, the term inculpatory statement refers to the out-of-court admission of incriminating facts made by a defendant after the crime has been committed. It relates to past events . . . Thus the article has no application to the conversation resulting in the sale of marijuana in the present case.
Res gestae, on the other hand, is defined as follows:
Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive (instinctive), impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence. (La. R.S. 15:447).
To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. (La.R.S. 15:448).
The facts of this case show that the defendant raped and shot a woman and shot her two children in an isolated wooded area. The statements objected to were uttered almost immediately after defendant and Armstrong covered the bodies of the victims with branches and twigs. The conversation between Armstrong and the defendant was an immediate concomitant of the slaying and the effort to conceal the bodies of the victims, all of which formed one continuous transaction. In our view these statements were clearly part of the res gestae. And the defense contention is without merit. State v. Lacoste, 256 La. 697, 237 So.2d 871 (1970); State v. Kreller, 255 La. 982, 233 So.2d 906 (1970); State v. Hudson, 253 La. 992, 221 So.2d 484 (1969).
 In Louisiana the res gestae rule has been broadened rather than restricted. The tendency has been favorably regarded by the courts because the ultimate object of the introduction of all evidence is the ascertainment of facts as a reasonable means of ascertaining the truth. Consequently, acts and declarations have been brought within the doctrine if they are connected with, and grow out of, the act or transaction in such a way as to form *1008 one continuous transaction, provided they, in some way illustrate, elucidate, qualify or characterize the act, and, in a legal sense, are a part of it. As a result, incidents offered as res gestae may he separated from the act by a lapse of time more or less appreciable, provided they grow out of and are in a legal sense immediately connected with the litigated act. State v. Reese, 250 La. 151, 194 So.2d 729 (1967); State v. Raymond, 258 La. 1, 245 So.2d 335; State v. Andrus, 250 La. 765, 199 So.2d 867 (1967).
III.
The next contention is based upon the following minute entry:
On voir dire examination of the prospective juror, Rufus Alexander, Jr., the State challenged for cause on the ground that the juror was prejudiced and did not believe in capital punishment and was unable to bring back a verdict of “Guilty as Charged” even in the event the State proved its case beyond a reasonable doubt, which challenge was granted by the Court, and objected to by counsel for defendant, reserving a Bill of Exception, making the entire venire, the questions to the juror, the challenge by the State, the defense objection and the ruling of the Court basis for said Bill.
Defense counsel predicate their objection on an- alleged failure to properly apply Article 798 of the Code of Criminal’ Procedure, as recently amended to embody the rule enunciated by the United States Supreme Court in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The pertinent part of the article as amended reads:
It is good cause for challenge on the part of the state, but not on the part of the defendant, that:
(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakeably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making impartial decision as to the defendant’s guilt. .... (.La.Code Crim.Proc. art. 798).
In substance the defense contention is that this amendment places the burilen of proof on the State to show that the veniremen so excused' for cause are incapable of impartially hearing the evidence before them. In support of this argument it is asserted that the quoted minute entry is the only record of excusing the juror. The testimony of the prospective juror and voir dire questions were not transcribed and are- *1010 -not in the record. Under these circumstances it is asserted the State has failed ■to sustain its burden so far as the record -is concerned.
In reply the State’s attorney asserts in its brief that .he tried the case and knows that each juror was questioned in accordance with the rule of .the Witherspoon Case and Article 798 of the Code of Criminal Procedure. He states emphatically "that each individual who was challenged for cause by the State had categorically declared that under no circumstances would 'he ever consider the death penalty in his deliberations; that it would be excluded automatically.
Moreover, citing Article 800 of the Code of Criminal Procedure, the State contends the erroneous allowance to the State of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the State of more peremptory challenges than it is entitled to by law.
Needless to say, we are unable to accept the statements in brief of the State’s attorney concerning the testimony of the prospective juror on voir dire. And, notwithstanding the fact that Article 798 may place the burden of proof upon the State, a question we do not decide, the burden of preserving the matters which form the basis for a bill of exceptions and the "burden of incorporating them into a for-mal bill lies with the party making the objection and reserving the bill. La.Code Grim.Proc. arts. 843-844. Although in. .a case where the death sentence has beep imposed this Court may, to promote the ends of justice, consider bills that have not been timely signed by the trial judge, this Court cannot, and will not, pass upon a defense contention unsupported by a bill, or at least the testimony which presents the issue. No showing has been made that this evidence could not be obtained.
In any event, there is merit in the State’s contention that there is no evidence that the State had exhausted its peremptory-challenges, or that excusing Alexander for cause actually gave the State another challenge after all of the peremptory challenges had been exhausted. La.Code Crim. Proc. art. 800.
The conviction and sentence are affirmed.
BARHAM, J., dissents and will assign reasons.
DIXON, J., concurs,

. U.S.Const. amend. "VIII: “Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.’’
La.Const. art. 1 § 12: “Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted . ... ”