SCHOTT, Judge.
This is an appeal by a juvenile from an adjudication as a delinquent pursuant to LSA-R.S. 13:1580, upon being found guilty of simple burglary in violation of R.S. 14:62 and receiving stolen things in violation of R.S. 14:69.
During the night of January 3, 1978, a supermarket in LaPlace, Louisiana, was broken into and heavily vandalized. Acting on information received from an informer, a warrant was issued for a search of the premises occupied by the juvenile and his brother, Sammy Hotard. A number of items identified as taken from the store were found on the premises, whereupon Theodore (hereinafter referred to as Teddy) and Sammy Hotard were taken into custody with another juvenile.
Sammy was interrogated at the Sheriff’s office and made a statement incriminating himself, his brother and several others as the perpetrators of the crime, and providing numerous details of their actions. However, at the trial Sammy denied that Teddy participated in the crime, and stated that his only involvement was to drive the car on one of the trips to the supermarket while he and the others continued to burglarize the premises.
The state succeeded in placing the entire statement into evidence over the juvenile’s objection after Sammy equivocated as to whether he had made the statement or not.
In this court, the juvenile has attacked the statement on a number of grounds. He contends that the state failed to prove that the statement was free and voluntary, it was improper because it constituted an attempt by the state to impeach its own witness, it became inadmissible when the witness admitted he had made the prior statement and that even if the statement was admissible to impeach Sammy Hotard it was nevertheless inadmissible to prove the juvenile’s guilt.
Because we find that the last contention with respect to the statement of Sammy Hotard has merit we need not discuss the other objections raised by the juvenile.
It is the established law of this state that a prior inconsistent statement of one’s own witness cannot be admitted as substantive evidence of the truth of its content. Its admissibility is limited for its effect on impeaching the credibility of the witness. State v. Williams, 331 So.2d 467 (La.1976), State v. Murphy, 309 So.2d 134 (La.1975), State v. Williams, 258 La. 251, 246 So.2d 4 (La.1971). In State v. Michelli, 301 So.2d 557 (La.1974) the court commented that for almost a hundred years it has been the law of this state that the confession by a confederate after the termination of the conspiracy may not be introduced or used at the separate trial of another to prove his guilt.
In contesting this point, the state concedes that this is the law of Louisiana but maintains that we are out of step with the majority of other jurisdictions. We have concluded that it is not within our province as an intermediate appellate court to make this change in our jurisprudence even though it may be in order. The argument addresses itself to the Supreme Court.
*234 Even without the statement of Sammy Hotard in evidence, the state contends that there was sufficient circumstantial evidence to convict the juvenile. This argument finds support in the findings of the trial judge, which included the following:
“This Court found the evidence against the juvenile to be ponderous and the attempt by his brother Sammy to take the blame for the entire crime to be flimsy. Even without the admission of the tape recorded statement of Sammy Hotard that his brother Teddy took part in the crime, this Court would have found Teddy a fit subject for further rehabilitation and in need of supervision.”
The record supports these findings. When the search warrant was executed one of the officers went to the front door and knocked and the other stationed himself on the side of the house. Three minutes later the back window opened and Sammy Ho-tard jumped from the window and ran, and Teddy Hotard was observed standing by the window. In the search the officers found several cases of liquor, several cases of soft drinks, about 30 cartons of cigarettes, about 100 packs of candy, and about 500 assorted candies and gum. Sammy testified in direct contradiction to the statement he had made to the officers that his brother was not involved in the burglary, never entered the supermarket, and did not involve himself in taking the items from the car. He stated that after he left the supermarket the first time with the merchandise and got to his home Teddy, who had been sleeping at home, woke up and decided to go out with Sammy and the others for something to eat. As they passed the supermarket with Teddy driving, Sammy said to Billy, “We want to stop in the store again and get more stuff.” They told Teddy to pull into the Post Office parking lot and wait while they re-entered the supermarket, leaving Teddy listening to the radio in the automobile. His testimony continued, “After we went in the store and went outside and told Teddy, come here and drive the car over here and pick us up. And he came over there and asked us where we got all that stuff and we told him, don’t worry about it.”
Teddy testified he had gone to sleep and his brother and the others came to his house and woke him up. Whereupon they showed him some “junk” and “some bacon . and ham and stuff like that.” He told them he was hungry for spaghetti, so they left with him driving and “ended up” on the street “where that store is.” They told him to pull up into the Post Office parking lot and to wait for them. After a few minutes they called him over to the side of the supermarket and his brother and the others loaded up the trunk of the automobile with filled green plastic bags. Thereafter they drove home and dropped off the bags. According to Teddy, he didn’t know until the next day where the bags had come from, and for the first time realized the stuff had come from the supermarket.
This circumstantial evidence along with the incredible testimony of Teddy himself was more than sufficient to convict him of the offenses and to support the adjudication of his delinquency.
We have carefully considered whether our conclusion is consistent with the jurisprudence. We are aware of many cases in which the admission into evidence of statements such as Sammy Hotard’s was considered prejudicial error. Examples are State v. Michelli, supra. But these cases were criminal jury cases in which the effect of the admissible evidence on the minds of the jurors could not be gauged. Any doubt had to be resolved in favor of the defendant. In the instant case, there is the affirmative declaration by the trial judge that he considered the evidence, other than the statement, sufficient to commit the juvenile.
The result we reach is likewise consistent with State In Interest of Simmons, 299 So.2d 906 (La.App. 3rd Cir. 1974). There the court in reversing an adjudication of delinquency because an inadmissible document was received in evidence by the trial court, stated:
“. . . Absent any contrary indication we must conclude that whatever is in *235 the record was considered by the juvenile judge. Since the report contains inadmissible and prejudicial evidence, the proceeding is stricken with nullity and the commitment must be set aside.” (Emphasis supplied)
Unlike the cited case, we have not merely an indication but a positive declaration by the trial judge that he reached a conclusion of the juvenile’s guilt without considering the inadmissible statement.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.