520 So.2d 838 (1987)
STATE of Louisiana, Plaintiff-Appellee,
v.
Michael A. BARNES, Defendant-Appellant.
No. CR87-485.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1987.
Richard A. Morton, Nichols & Morton, DeRidder, for defendant-appellant.
William C. Pegues, III, Dist. Atty., DeRidder, for plaintiff-appellee.
Before KNOLL and KING, JJ., and CULPEPPER, J. Pro Tem.[*]
*839 KING, Judge.
This appeal presents the issues of whether or not it was proper to admit at trial certain oral statements as res gestae; whether or not there is sufficient evidence to support the conviction; and whether or not a seven year sentence for this conviction is excessive.
On April 29, 1986, Boykin Mitchell, an inmate at the Louisiana Correctional and Industrial School (hereinafter LCIS) was stabbed by Michael A. Barnes (hereinafter defendant), another inmate at LCIS. Mitchell received two serious wounds. Defendant was charged with attempted second degree murder, tried, and convicted of attempted manslaughter. Defendant was sentenced and appeals his conviction and sentence to this court urging five assignments of error. We affirm the trial court's conviction and sentence.

FACTS
On April 29, 1986, Boykin Mitchell, an inmate at LCIS was stabbed by another inmate, the defendant, Michael Barnes. Allegedly, the disturbance that led to the stabbing occurred when the two men were arguing over cookies.
Defendant claimed that after he refused to give Mitchell some cookies, Mitchell threatened to hurt him and, after this threat, Mitchell went to his locker and got something. Defendant then claimed Mitchell pushed him and began to wrestle with him and that he then grabbed a knife from Mitchell's hands and "jugged" (stabbed) Mitchell. Defendant claims that his reaction to Mitchell's aggression was self-defense.
Mitchell's version of the encounter differs greatly. Mitchell testified that while he was lying in his bunk, the defendant, who was lying in a bunk next to him, suddenly lurched at him with a knife in hand. Mitchell further claimed that there was no prior discussion between them and that the attack was unprovoked.
Introduced at trial was a written statement given by the defendant the day after the incident. This statement was witnessed by Sergeant Willie Craft and by the questioning officer, Lt. I.M. Thompson. Officer Thompson testified that he first read the defendant his Miranda rights in the presence of Warden Middlebrooks, and then again in the presence of Sergeant Craft, when the statement was taken a day later. Defendant then signed the statement and initialed specific answers on it. Pertinent portions of the statement are as follows:
"I.M.T. Michael [Barnes], I'm Lt. Thompson, Chief Investigator at LCIS. I have read you your rights and I want to ask you some questions. I want you to start from the beginning and tell me what happened tonight.
* * * * * *
M.B. He [Boykin Mitchell] asked me for some cookies and I told him no. Then he said if I don't give him some he was going to hurt me.
I.M.T. He said he was going to hurt you?
M.B. Yes.
I.M.T. Did anybody hear him say that?
M.B. Nobody was around at that time.
I.M.T. Then what happened?
M.B. I waited until he sat down and I did what I had to do.
I.M.T. Where did he sit down?
M.B. On his bed.
I.M.T. What did you do?
M.B. I layed [sic] there and jugged him.
I.M.T. What?
M.B. I did what I had to do.
* * * * * *
I.M.T. What kind of weapon did you have?
M.B. It came off a piece of locker.
I.M.T. Off of a piece of locker?
M.B. Yea a lock.
* * * * * *
I.M.T. Did anyone else witness this?
M.B. No.
I.M.T. Did Boykin Mitchell try to stab you with anything?
M.B. Not as I know of, I just ran.
I.M.T. Where did you run?
*840 M.B. My bed.
* * * * * *
I.M.T. Is this statement given free and voluntary?
M.B. What is that?
I.M.T. Am I pressuring you to give me this statement?
M.B. No.
I.M.T. I did read you your rights earlier in front of Warden Middlebrooks?
M.B. Yes.
 /s/ Michael Barnes"
At the trial there was conflicting testimony as to the events that led to the stabbing. The defense called three inmates to testify on behalf of the defendant; two of them, Louis Starks and Ben Harris Thompson, shed no new light on the matter except to state there was a scuffle between the defendant and Mitchell before the stabbing. The other defense witness, Herman Smith, went on to essentially verify what the defendant had alleged in his testimony.
The State called several officers including Sgt. Craft and Lt. I.M. Thompson along with Warden J.O. Middlebrooks. Also called was Boykin Mitchell, the inmate who was stabbed.
After a trial by a jury of twelve, a verdict of guilty of attempted manslaughter was returned. Thereafter the defendant was sentenced to seven years at hard labor. The defendant timely appeals his conviction asserting the following assignments of error:
(1) The trial court erred in admitting into evidence at trial hearsay testimony which was highly prejudicial, which error substantially affected the defendant's right to a fair trial;
(2) The trial court erred in admitting into evidence at trial irrelevant testimony which was highly prejudicial, which error, substantially affected the defendant's right to a fair trial;
(3) The State failed to meet its burden of proving that the defendant was acting other than in self-defense;
(4) There was insufficient evidence at trial to prove an element of the crime of attempted manslaughter for which the defendant was convicted, to-wit: There was no proof as to the defendant's specific intent to kill the alleged victim; and
(5) The trial court erred in sentencing the defendant to a sentence of seven years at hard labor with the Louisiana Department of Corrections, which sentence is excessive and amounts to cruel and unusual punishment.

ASSIGNMENT OF ERROR NUMBER 1
Defendant argues in his first assignment of error that the trial court erred in admitting certain oral statements into evidence as res gestae. At trial Boykin Mitchell, the victim, testified that, after he was stabbed, he ran to where the guards were. There he was asked what happened, to which he replied: "Michael Barnes has tried to kill me." In overruling the defense's objection to the admissibility of this statement, the trial judge ruled the statement was relevant and was a part of the res gestae of the event.
LSA-R.S. 15:447 defines res gestae as:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
Defendant argues to this court that because a guard asked Mitchell, "What happened?" as Mitchell rushed to him, bleeding, that Mitchell's answer was a narrative statement in response to questioning and hence excludable under State v. Williams, 331 So.2d 467 (La.1976). The facts in that case are substantially different and we pretermit any factual analysis between Williams and the case at hand. It is evident that there was no time lag between the stabbing of Mitchell and his seeking help from the officers in charge. Mitchell's statement to the officers was spontaneous and was more of a shocked plea for help than defense counsel's suggestion that it was a casual narrative conversation. We find as did the trial court that this statement *841 was part of the res gestae and clearly admissible. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 2
Defendant failed to brief this assignment of error. Assignments of error not briefed are considered abandoned on appeal. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Joe, 502 So.2d 270 (La.App. 3 Cir.1987); State v. Alexander, 487 So.2d 468 (La.App. 3 Cir.1986).

ASSIGNMENT OF ERROR NUMBER 3
Defendant argues to this court that the State failed to prove that he did not act in self-defense. There was no mention of self-defense until the trial began and the defendant claimed that he had acted in self-defense. In defendant's statement, taken shortly after the incident, he indicated that when Mitchell sat on his bed, he "jugged" (stabbed) Mitchell. Defendant, later in the same statement, stated that Mitchell did not try to stab him at all. This supports Mitchell's testimony of the events as to what happened. The evidence and testimony presented to the jury was of a sufficient nature for them to consider a valid self-defense claim. They chose not to believe the defendant.
When there is conflicting testimony as to a factual matter, the question of the credibility of the witnesses is within the sound discretion of the trier of fact. The jury's factual determinations are entitled to great weight and should not be disturbed unless clearly contrary to the evidence. State v. Klar, 400 So.2d 610 (La.1981). The jury's determination in this matter, that the defendant did not act in self-defense, is not clearly contrary to the evidence. Therefore, viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have concluded that the State carried its burden of proving that the defendant did not act in self-defense. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 4
Defendant argues by this assignment of error that there was insufficient evidence to prove he had the specific intent to kill. Specific intent is defined in LSA-R.S. 14:10 states:
"(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
Defendant correctly cites Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979) and State v. Captville, 448 So.2d 676 (La.1984) regarding the standard of review for sufficiency of evidence. This legal standard for review requires that the appellate court determine that the evidence, when viewed in the light most favorable to the prosecution, is sufficient to convince a rational trier of fact that all of the elements of the crime charged were proven beyond a reasonable doubt.
In reviewing the record before this court, it is evident that there was sufficient evidence and testimony before the trier of fact to convince them of the defendant's intent to kill or inflict great bodily harm. We find no error in the verdict of the jury. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 5
The defendant was convicted of attempted manslaughter and sentenced to seven years at hard labor. Attempted manslaughter carries a maximum sentence of ten and one-half years. LSA-R.S. 14:27 D(3); LSA-R.S. 14:31(2)(b). In his lengthy and well detailed explanation for the sentence, the trial judge stated that defendant had been in trouble with the law as a youth; had been convicted of armed robbery in 1982; has been written up several times at LCIS for different violations of prison rules; and also stated that he found from the defendant's conduct that the defendant had a bad attitude in general.
In State v. Morgan, 428 So.2d 1215, at page 1216 (La.App. 3 Cir.1983), writ den., 433 So.2d 166 (La.1983), this Court stated the appellate standard of determining whether a sentence is unconstitutionally excessive as follows:

*842 "[A] sentence is excessive if it is grossly disproportionate to the sererity of the offense. State v. Bonanno, 384 So.2d 355, 358 (La.1980). In determining whether the penalty is grossly disproportionate, the court must consider `the punishment and the crime in light of the harm to society caused by its commission, and determine whether the penalty is so disproportionate to the crime committed as to shock our sense of justice.' Id. In reviewing a claim of excessive sentencing, the trial judge is to be afforded wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Abercrumbia, 412 So.2d 1027 (La.1982)." State v. Morgan, 428 So.2d 1215, at page 1216 (La.App. 3 Cir.1983), writ den., 433 So.2d 166 (La.1983).
See also State v. Miller, 495 So.2d 422 (La.App. 3 Cir.1986).
It is well settled that the sentencing court has great discretion in imposing sentence. State v. Square, 433 So.2d 104 (La. 1983). When the sentencing guidelines of La.C.Cr.P. Art. 894.1 are followed, a sentence should not be set aside as excessive in the absence of an abuse of the sentencing court's wide sentencing discretion. State v. Marcantel, 502 So.2d 127 (La.App. 3 Cir.1987), and the cases cited therein. The record reflects that the sentencing guidelines were applied and that the sentence is not so grossly disproportionate to the severity of the offense as to shock our sense of justice. There appears to be no abuse of discretion on the part of the sentencing judge. We find that the seven year sentence imposed is not excessive considering the severity of this offense. This last assignment of error is also without merit.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.